JOHN C. SPEIRS *vs.* UNION DROP FORGE COMPANY.

Worcester.   October 6, 1898. — July 12, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Construction of Contract — Breach — Action — Absence of Corporate Seal.*

A., a corporation, and B. executed a written agreement, by which A. "does employ" B. "to produce certain drop forgings at his drop forge plant and shop . . . for and during the period" of one year, and B. "hereby agrees to and does hereby accept said employment, and agrees to give during said period" to A. "the full and entire use of his said plant and shop," except one drop hammer, the use of which he reserves "for forging wrench forgings only," and also agrees to furnish at his own expense all machinery, tools, and implements, except dies, which he was to furnish at cost; and A. "agrees to furnish all of the steel or other material for the manufacture and product of said drop forgings, which said steel and the manufactured product therefrom" and all scrap produced by the forging should remain the property of A., and "the forgings so produced and manufactured shall be shipped" as A. "shall from time to time direct," and "the scrap which shall be produced" sold, and its proceeds fully accounted for to A., and the prices to be paid for the manufacture of the forgings "shall be determined from time to time by the mutual agreement of the parties hereto," and B. "shall render monthly statements of account," and A. "shall remit and pay the amount of the same on or before the tenth" of the next month.   About a week after the contract was made, and two months before the year was to begin, the parties met and agreed upon prices to be paid for the manufacture of certain kinds of drop forgings which might be manufactured by B. for A. under the agreement.   At the time named in the agreement B. was ready to produce the

forgings, and so notified A., and several times requested him to furnish work, but A. furnished none. *Held,* that B. could maintain an action against A. for breach of the agreement; and that the absence of A.'s corporate seal from the contract did not affect B.'s right of action.

CONTRACT, for breach of a written agreement. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, upon agreed facts, in substance, as follows.

The plaintiff, in the years 1896 and 1897, owned and operated a drop forge plant in Worcester, doing business under the name and style of John C. Speirs and Company.

The defendant, in the same years, owned and operated a drop forge plant in Chicago, Illinois.

On March 24, 1896, the plaintiff and the defendant executed the following agreement:

"This agreement made and entered into this twenty-fourth (24th) day of March, A. D. 1896, by and between the Union Drop Forge Company of Chicago (an Illinois corporation), party of the first part, and John C. Speirs & Company, of the City of Worcester, State of Massachusetts, party of the second part, Witnesseth:

"1. That the said first party is desirous of employing, and does hereby employ said second party to produce certain drop forgings at his drop forge plant and shop in the City of Worcester, Massachusetts, for and during the period beginning with the first day of June, 1896, and ending with the thirty-first day of May, 1897.

"2. The said party of the second part hereby agrees to, and does hereby accept said employment, and agrees to give during said period, to the said first party, the full and entire use of his said plant and shop, and to furnish all machinery, tools and implements at their own expense, which shall be required for the purposes of producing said forgings (excepting one drop hammer which said second party desires to reserve for their own use for forging wrench forgings only), and to furnish at actual cost any and all dies required for above forgings.

"3. The said first party agrees to furnish all of the steel or other material for the manufacture and product of said drop forgings, which said steel and the manufactured product there-

from, and all scrap which shall be produced by said forging, shall be and remain at all times the property of the said first party.

" 4. The forgings so produced and manufactured shall be shipped by said second party F. O. B. Worcester, as the said first party shall from time to time direct ; and the scrap which shall be produced from said forging shall be sold by said second party for and on account of the party of the first part, and the proceeds thereof shall be fully accounted for to it by them.

" 5. The prices to be paid for the manufacture of said drop forgings shall be determined from time to time by the mutual agreement of the parties hereto.

" 6. The said party of the second part shall render monthly statements of account to the said party of the first part, which shall remit and pay the amount of the same on or before the tenth (10th) of the succeeding month.

" In witness whereof the said party of the first part has caused this instrument to be executed by its president, and attested by its secretary under its corporate seal, and the said second party have hereunto set their hands and seals.

" Attest: William G. Holbrook, Secretary. Union Drop Forge Company, by Francis W. Holbrook, President. J. C. Speirs & Co., by John C. Speirs." (Seal.)

On June 1, 1896, the plaintiff's entire plant and shop and all his machinery, tools, and implements necessary for producing forgings, except one drop hammer, which the plaintiff reserved for his own use for forging wrench forgings, as stated in the agreement, were ready to produce forgings for the defendant under the agreement, and the plaintiff notified the defendant of that fact.

About April 1, 1896, the defendant met the plaintiff and agreed upon prices to be paid for the manufacture of certain kinds of drop forgings, which might be manufactured by the plaintiff for the defendant under the agreement.

The plaintiff was at all times ready and willing to furnish at actual cost any and all dies that might be required for the forgings manufactured under the agreement.

Between June 1, 1896, and October 13, 1896, the plaintiff several times asked the defendant to furnish him work, and was at all times willing to perform work under the agreement for the defendant, but the defendant furnished no work, and on

October 13, 1896, in a letter to the plaintiff the defendant wrote as follows:

" In the terribly disturbed condition of finance, and every-thing else in the country, we have made no effort to get work; and yet we have had executed contracts in our hands, some of them for two months, without any specifications to execute. The fact is, even our best western manufacturers have been at their wit's end to know just what to do, or when to begin, and to what extent to employ their plants. But there seems to be a movement of the waters indicating considerable activity in the near future, as soon as the election is over. At any rate, we are getting ready for a rush of business, and hope we will not be disappointed."

Thereupon, on November 4, 1896, the plaintiff notified the defendant that he would hold the defendant responsible under the agreement for his damages by reason of the defendant's alleged breach thereof, and the plaintiff immediately went into the market and attempted to get work for his shop from other parties than the defendant.

The case was argued at the bar in October, 1898, and after-wards was submitted on briefs to all the justices.

*F. B. Smith*, for the plaintiff.

*C. M. Rice*, for the defendant.

BARKER, J. The defendant contends that it merely acquired an option to have such forgings as it might choose to furnish material for, and order, produced by the plaintiff at his shop during the period specified in the contract, and that its own refusal and failure to furnish materials and call for work was not a breach of the contract. But the language of the instrument indicates more. The defendant, for the period of a year the beginning of which when the contract was made was some two months in the future, " employs " the plaintiff, an individual shop-owner, " to produce certain drop forgings " at his own plant and shop. The plaintiff " hereby agrees to and does hereby accept said employment, and agrees to give during said period " to the defendant " the full and entire use of his said plant and shop," save one drop hammer, the use of which he reserves " for forging wrench forgings only," and he also agrees to furnish at his own expense all machinery, tools, and imple-

ments, except dies, which he is to furnish at cost.    Then the defendant " agrees to furnish all of the steel or other material for the manufacture and product of said drop forgings, which said steel and the manufactured product therefrom, and all scrap which shall be produced by said forging, shall be and remain at all times the property of the " defendant.    " The forgings so produced and manufactured shall be shipped " as the defendant " shall from time to time direct; and the scrap which shall be produced " sold and its proceeds fully accounted for to the defendant.    The prices to be paid for the manufacture of the forgings " shall be determined from time to time by the mutual agreement of the parties hereto," and the plaintiff " shall render monthly statements of account," and the defendant " shall remit and pay the amount of the same on or before the tenth " of the next month.

While the true meaning of the document is not easy to determine, and depends much upon the emphasis to be given to its respective parts, a majority of the court are of the opinion that it must be so construed that under the agreed facts the plaintiff has a right of action.    As we construe the language, there is in the document a positive hiring of the plaintiff by the defendant for a year, explicitly accepted by the plaintiff, and a distinct agreement that the plaintiff shall also give the defendant the full and entire use for the year of his plant and shop, reserving only the right to use one drop hammer in forging articles of but a single kind.    Such language could not have been used to merely confer upon the defendant an option to have as much or as little work done at the plaintiff's shop as the defendant might choose and at prices to which the plaintiff must agree.    Whatever meaning is to be given to the word " certain " in the phrase " to produce certain drop forgings," it is going too far to say that it marks the contract as one meant merely to give the defendant an option.    The rest of the instrument, as the part already considered, indicates that the parties expected that the shop would be operated continuously, and the contract may fairly be construed to require that it should be so operated, and that each party agreed to do what was incumbent on it to have the shop so operated.    The amount of material to be furnished and the amount of product to be turned out are to be

measured by the capacity of the plant and shop, " the full and entire use " of which is to be given to the defendant during the period. The careful provision for monthly accounts and payments is in the same direction, and could hardly have been drawn in its present form if the purpose had been merely to give an option, as the defendant contends. But the most decisive consideration is that already mentioned, that there is an employment of the plaintiff for a year, and an obligation on his part to give the defendant for the same period " the full and entire use " of his whole plant and shop, reserving a restricted use of a single machine only. The fact that the parties met a week after the contract was made and two months before the year was to begin, and then agreed upon prices to be paid for the manufacture of certain kinds of drop forgings which might be manufactured by the plaintiff for the defendant under the agreement, looks in the same direction. Construing the contract as an agreement that the defendant was bound to furnish the plaintiff, whom he had hired for a year with the use of his shop, with work during the year to the capacity of his shop, and that the parties had agreed that they would agree upon the prices to be paid, it was reasonable and necessary for them to meet at once, and before the year began, to settle a scale or list of prices. But if the contract was a mere option to be exercised by the defendant it would be unreasonable for the parties in April, 1896, to agree upon prices for work which might never be ordered, or not ordered until so remote a time as to make the prices unjust to one party or the other.

In the opinion of a majority of the court, the proper construction of the instrument is that the defendant was bound by it to keep the plaintiff and his shop employed during the year, unless the plaintiff should upon request unreasonably refuse to come to a mutual agreement as to prices, or should otherwise break the agreement. See *Carnig* v. *Carr*, 167 Mass. 544; *The Queen* v. *Welch*, 2 El. & Bl. 357; *Pilkington* v. *Scott*, 15 M. & W. 657; *Hartley* v. *Cummings*, 5 C. B. 247; *Whittle* v. *Frankland*, 2 B. & S. 49; *Aspdin* v. *Austin*, 5 Q. B. 670; *Dunn* v. *Sayles*, 5 Q. B. 685.

The absence of the defendant's corporate seal from the contract does not affect the plaintiff's right to maintain this action.

Upon the construction which we give to the contract the con-
duct of the defendant as stated in the agreed facts was. such
a breach of the contract as gave the plaintiff a right to sue.
*Parker* v. *Russell*, 133 Mass. 74.  *Paige* v. *Barrett*, 151 Mass.
67.  *Cutter* v. *Gillette*, 163 Mass. 95.

*Judgment for the defendant set aside.*