JOHN C. SPEIRS *vs.* UNION DROP FORGE COMPANY.

Worcester.   September 30, 1901. — November 25, 1901.

Present : HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Practice, Civil,* Assessor's report. *Damages,* Loss of profits, For repudiation of contract. *Interest.*

With regard to the correctness of an assessor's finding of fact the only question that can be raised is whether there was evidence to support it.

In assessing damages for the breach of an agreement to keep the plaintiff and his shop employed for a year in producing forgings for bicycles from materials to be furnished by the defendant, where the contract provided, that the prices to be paid for the manufacture of the forgings should be determined from time to time by the mutual agreement of the parties, it appeared, that the plaintiff and defendant had agreed upon the prices to be paid for certain kinds of the forgings which were the principal parts of a bicycle, and there was evidence that the making of these forgings was expected to be the principal work done. There was expert testimony that on the facts that appeared it was possible to estimate what would have been the profit of the work, and the plaintiff testified to what the profit would have been. *Held,* that an assessor was warranted in adding an allowance for profits to the cost of remaining idle, and that it was a fair inference that the pieces on which the prices were fixed by agreement were to be made in large quantities. KNOWLTON, J. dissenting, as to the allowance for loss of profits.

The defendant agreed to keep the plaintiff and his shop employed for a year from June 1, in manufacturing certain articles from materials to be furnished by the defendant. The defendant sent no orders from June 1 to November. In the January following the plaintiff brought an action to recover damages for the breach of contract. *Held,* that an assessor was warranted in finding that the defendant had repudiated the entire contract and that the plaintiff was not compelled to wait until the expiration of the year contracted for in order to recover entire damages.

Where it appears that an assessor has assessed damages as of the date of the writ, it is right for the judge to allow interest from that date, instead of from the date of the report as indicated by Pub. Sts. c. 171, § 8.

CONTRACT for breach of an agreement in writing to keep the plaintiff and his shop employed for one year from June 1, 1896, in producing drop forgings from materials to be furnished by the defendant, the prices to be paid for the manufacture of the forgings to be determined from time to time by the mutual agreement of the parties.   Writ dated January 14, 1897.

At the first hearing of this case on agreed facts the Superior Court gave judgment for the defendant, and the plaintiff appealed.   In a decision reported in 174 Mass. 175, this court sus-

tained the appeal and set aside the judgment, deciding that the plaintiff had a right of action. The contract is printed in full in that report.

In accordance with a stipulation in an agreement of facts filed by the parties, the case was referred to an assessor who took evidence, filed a report assessing the plaintiff's damages, and at the request of the parties reported all the evidence, exhibits and vouchers, together with the defendant's requests, objections and exceptions, to the Superior Court. The case came on to be heard, upon the defendant's exceptions to the assessor's report, before *Gaskill*, J., without a jury. The judge against the defendant's objection and exception made a *pro forma* order overruling all of the defendant's exceptions, sustaining the assessor's report and finding for the plaintiff in the sum of $14,694, and reported the case for determination by this court upon the assessor's report and the defendant's exceptions thereto and to the *pro forma* order, and reported also all of the vouchers, exhibits and evidence.

If in the opinion of this court the *pro forma* order was correct, a judgment was to be entered upon that finding; otherwise, the order was to be set aside, and such order and entry of judgment were to be made as to this court should appear to be just and in accordance with the law applicable to the case.

*J. C. Howard*, (of Chicago,) (*C. M. Rice* with him,) for the defendant.

*F. B. Smith*, (*T. H. Gage, Jr.*, with him,) for the plaintiff.

HOLMES, C. J. This is an action of contract which already has been before the court. 174 Mass. 175. It having been decided that the instrument sued upon bound the defendant to keep the plaintiff and his shop employed during the year from June 1, 1896, to June 1, 1897, and that the plaintiff had a cause of action, the case was sent to an assessor, as had been agreed by the parties.

The defendant seems to have confounded proceedings before an assessor with proceedings before a master, and to have supposed that the Superior Court and this court would reconsider the evidence and revise the assessor's findings of fact to the same extent as in an equity cause. To this end it took objections and afterwards filed exceptions to the report, after the

equity practice. These objections and exceptions are most unnecessarily prolix and argumentative even had the defendant's view been right. But very plainly it was wrong.

The proceeding is at law. All that can be brought before this court is the question whether there was any evidence to support a finding objected to. That may be brought here in the usual way, as pointed out in *Carew* v. *Stubbs*, 161 Mass. 294, 295. Following the implications of St. 1883, c. 216; 1886, c. 51; Pub. Sts. c. 159, § 55, we assume with the defendant that in general an assessor is not a species of auditor. We do not understand anything to the contrary to have been decided in *Fisk* v. *Gray*, 100 Mass. 191, 193; *S. C.* 11 Allen, 132, 134, *Paddock* v. *Commercial Ins. Co.* 104 Mass. 521, 531, or *McKim* v. *Blake*, 139 Mass. 593, 595. We assume in favor of the defendant that, when a case is sent to an assessor by agreement of parties in a case like this, there is no right to retry the facts, and that therefore it was not necessary for the defendant, in order to save his objections, to make a motion to recommit. See *Fair* v. *Manhattan Ins. Co.* 112 Mass. 320, 331, 333. It follows from the same assumptions that the Superior Court had no greater power than this court, and was confined to the question whether there was any evidence to warrant the material findings of the assessor. It follows further that, although the practice of ruling *pro forma* has been condemned by this court, *Parker* v. *Parker*, 118 Mass. 110, the defendant has suffered no wrong by the course adopted. The same questions are open here that were open below.

The defendant excepts generally that the assessor had no right to find more than nominal damages. So far as this exception is founded on the nature of the contract, whether because it leaves prices to be fixed or otherwise, it is answered by the previous decision that the case should be sent to an assessor under the agreement, a step which would be absurd if it were apparent that only nominal damages could be recovered. We do not discuss further what has been decided. So far as the exception is based upon the evidence we are of opinion that the assessor was warranted in finding substantial damages. Before considering what the evidence was it is worth remarking that when it is established that such a contract has been made and

that under it the plaintiff has been idle for months in constant expectation of orders that never came, it reasonably may be presumed by the judge of facts that the plaintiff's loss has been substantial, — indeed maintaining the shop and waiting is an expenditure toward the performance of the contract to be recovered under the rule in *United States* v. *Behan*, 110 U. S. 338, 344, 345, cited by the defendant, — and it would be unjust to turn the plaintiff off with a dollar because he could not prove with prophetic certainty what the exact course of performance would have been.

The defendant objects that it had the right to call for any kind of drop forgings, that even within the limits of drop forgings for bicycles each of the different parts had many different forms, and that the orders might have been so various in kind and so small in their several amounts as to deprive the plaintiff of any chance of gain. This objection goes to the allowance of profits as distinguished from the cost of remaining idle. The general answer is that in estimating the worth of the contract of which the plaintiff has been deprived we are to consider not what legally might have happened but what would have happened had the defendant done as it agreed ; or, to put it a little differently, we are to consider commercial, not legal possibilities. It is absurd to imagine the defendant in performing the contract employing a lawyer's acumen to find out in what way it could deprive the plaintiff of profit instead of employing business intelligence to decide how it could best make profit for itself. Therefore before referring to the evidence we may say, or rather the assessor was warranted in inferring, that the defendant if it employed the plaintiff for a year would employ him mainly in the forging of objects of general demand having a large market, rather than mainly upon a long succession of small orders of peculiar kinds ; and, to anticipate, there was testimony confirmatory of that general conclusion.

But the shape which performance would have taken is not left merely to a consideration of commercial possibilities. The plaintiff was to be employed with his shop for a year. The material was to belong to the defendant throughout, so that is out of the case. Just after the contract was made there was a talk between the plaintiff and the defendant's agent, in which

the latter said that they wanted to fix prices now; the plaintiff asked him what class of work and was answered all bicycle work; the agent exhibited samples of forgings, and the plaintiff figured out the prices and gave them to the defendant. In the agreed facts it appears that about April 1 the plaintiff and defendant agreed upon the prices to be paid for the manufacture of certain kinds of drop forgings. The interview and prices just mentioned made the agreement referred to. Even if the fact had not been agreed, the evidence warrants the inference that the parties understood that to that extent they were at one. The plaintiff testified that the arrangement fixed the prices for the year. There was evidence that the articles enumerated in the price list were the essential parts of a bicycle, and that there were standard forms of these articles in general use. It is a fair inference that the prices were fixed on the understanding that the pieces were to be made in large quantities. That is the import of the interview, and is the inference drawn by one of the defendant's witnesses from a mere inspection of the list. The plaintiff says that he was told that the defendant had large orders for that class of work. The capacity of the plaintiff's shop was known.

There is expert testimony that on the foregoing facts it is possible to estimate what would have been the profit of the work. The plaintiff, who knew the form of the samples on which he made his prices, testified to what the profit would have been, and others testified on the footing that the forms were standard forms, as presumably they were. We cannot say as matter of law that the assessor was not warranted in believing the testimony and in making an allowance for profits in pursuance of it.

The defendant contends that damages cannot be recovered after the date of the writ, and also that the contract is severable because it provides for monthly payments. The assessor was warranted in finding and the plaintiff in supposing that a failure to send orders from June 1 to November amounted to a practical repudiation of the entire contract notwithstanding vague expressions of hope on the defendant's part. These were before the court when it made its former decision. If the breach of the contract was so considerable as to go to its essence, the

plaintiff was not compelled to wait until the end of the time of its running in order to recover entire damages. *Parker* v. *Russell*, 133 Mass. 74, *Paige* v. *Barrett*, 151 Mass. 67, *Cutter* v. *Gillette*, 163 Mass. 95, cited in the former decision of this case, 174 Mass. 175, 181. *Roehm* v. *Horst*, 178 U. S. 1, 7, 20. The extraordinary suggestion that the plaintiff rescinded the contract by suing upon it does not need discussion, *Whiteside* v. *Brawley*, 152 Mass. 133, 134, and the further suggestion that the contract was rescinded by a letter from the plaintiff's counsel of November 4 needs but a word. In the first place, the suggestion is contrary to the agreement of parties by which the case was sent to the assessor. If the contract had been rescinded there could be no recovery upon it even of nominal damages. But apart from that, the letter is a letter claiming damages for breach of the contract, in other words insisting upon it. It is true that it gave notice that the plaintiff could not remain longer idle and would try to get other work, but that was simply in accordance with the plaintiff's duty to reduce the damages so far as he reasonably could, when he was satisfied that the contract was thrown up. Finally, the letter was written as an effort to make a compromise.

It is argued that the assessor had no right to allow a salary, pay roll for June, taxes and insurance in addition to profits. But that depends on the sense in which the assessor used the word "profits." If he had meant by it the total difference to the plaintiff between keeping the contract and breaking it, the argument would be right. But he shows that he does not use the word in that sense by the allowance of the different sums. He reports that performance of the contract would have been worth to the plaintiff certain sums of actual outlay and an additional amount, which last alone he designates as profits, — a perfectly intelligible use of language. See *United States* v. *Behan*, 110 U. S. 338, 345; *Fox* v. *Harding*, 7 Cush. 516, 522. It is true that if the plaintiff had been paid on the footing of the prices fixed by him the payment would have included every-thing. But he was not paid. The assessor has used the list of prices, if at all, merely as one means of arriving at his result, aided by the testimony of experts as to what the profits would have been. It is enough that there was some evidence warrant-

ing his conclusion, supplemented, as such evidence must be, by the discretion and judgment of the tribunal of fact. We have not to consider whether we should have come to the same result.

We see no reason for saying that the dies ordered by the plaintiff were not ordered under the contract.

The assessor was not bound to believe uncontradicted testimony or to find facts based upon it, or to state more particularly than he did the principles upon which he went. We may say generally, also, at this point, that so much of the argument as deals with the weight of evidence is out of place.

We do not consider it necessary to go further into the details of the exceptions to the assessor's report or of the argument upon them. We have considered them all, and see no reason why the report should not be accepted and confirmed.

The only question that remains is whether the Superior Court erred in the amount for which it proposed to order judgment. The assessor found the damages to be $11,616.62. The court gave the plaintiff $14,694, seemingly having allowed interest from the date of the writ. It is argued that the practice indicated in Pub. Sts. c. 171, § 8, should have been followed, and that interest should have been allowed only from the date of the report. See *The Isaac Newton*, Abbott, Adm. 588, 595; *Cox* v. *McLaughlin*, 76 Cal. 60, 67, 70; *Shipman* v. *State*, 44 Wis. 458, 462; *White* v. *Miller*, 78 N. Y. 393; *McMaster* v. *State*, 108 N. Y. 542, 558; 16 Am. & Eng. Encyc. of Law, (2d ed.) 1046. But in this case the court is of opinion that the damages must be taken to have been assessed as of the date of the writ and that no error is shown. See *Barrow* v. *Reab*, 9 How. 366, 371; *Allen* v. *Murray*, 87 Wis. 41; *Frazer* v. *Bigelow Carpet Co.* 141 Mass. 126.                    *Judgment on the finding.*

KNOWLTON, J.    I regret that I am unable to agree with the majority of the court in their decision of this case.

Under the agreement the plaintiff was to do important work for the defendant, which would occupy him and his shop continuously for a year. For this he was to be paid in money, not under an implied contract what the work would be reasonably worth, but the sum that should be expressly agreed upon between

the parties for each forging which he should make from the defendant's material.   The amount to be paid by the defendant and received by the plaintiff was therefore to depend on agreements to be made by the parties in the future in reference to the work to be done.   It is an elementary principle of the law of contracts that so long as an essential element entering into the proposed obligation of either of the parties remains to be determined by an agreement which they are to try to make, the contract is incomplete and unenforceable.   *Non constat* in such a case that they will ever be able to agree.   *Sibley* v. *Felton*, 156 Mass. 273.   *Lyman* v. *Robinson*, 14 Allen, 242, 252.   *May* v. *Ward*, 134 Mass. 127.   *Ashcroft* v. *Butterworth*, 136 Mass. 511.   *Freeland* v. *Ritz*, 154 Mass. 257.   *Appleby* v. *Johnson*, L. R. 9 C. P. 158.   *Honeyman* v. *Marryatt*, 6 H. L. Cas. 112.   *Ridgway* v. *Wharton*, 6 H. L. Cas. 238.   I deem it too plain for discussion that when the first agreement was signed, and so long as there was no agreement upon the price to be paid for any of the work, there was no contract that bound the plaintiff to do anything, or that bound the defendant to pay anything.

  The plaintiff in bringing this suit, this court in the former decision of the case, and the assessor in making his report, have all treated the agreement as a single, entire contract, for the breach of which entire damages are to be assessed once for all. Viewed in reference to the liability of the defendant in damages for the profits which might have been derived from the performance of it if it had not been broken, I agree that the contract was single and entire, covering all that was to be done during the year.   Every part of the work to be done under it was a constituent element of it which cannot be disregarded.   We are therefore brought directly to the question whether, in reference to an estimate of the plaintiff's profits to be derived from the performance of the contract, an agreement upon the prices for a part of the work included in it, with no agreement as to the prices to be paid for other material parts of this work, so far completes the contract as to bind the parties to continue working under it if they are unable to agree upon the price for these other material parts, when the time comes for dealing with them. Clearly neither party would be obliged to go on with those parts of the work upon the price of which they were unable to agree.

It is equally clear that the plaintiff, who was entitled to have his shop fully occupied, would not be obliged to go on with only a part of the defendant's work, leaving some of his machines idle. The defendant, which was entitled to have all its work done at the plaintiff's shop to the extent of the shop's capacity, would not be obliged to have a part of it done there if it was compelled to go elsewhere for another part of it which was included in the original contract. A disagreement of the parties at any time in regard to the price to be paid for any of the forgings which the defendant called for under the contract, would immediately make it impossible for either of them to have the contract afterwards performed according to its terms. Either party would have the right to refuse to go on with only a part of the work included in the contract, so long as he could not go on with the whole in the way stated in the writing. The original agreement bound the parties to go on only so long as they were able to agree upon the price to be paid for all the work which the defendant might at any time order. It was made subject to a contingency which might at any time terminate the obligation of the parties to proceed further with it. The existence of this contingency makes it impossible to compute the profits to be derived from the performance of it for a year, or for any other time, as a part of the damages to be assessed for the breach of it.

Apart from the fact that the obligation of the parties to perform was liable at any time to come to an end, there is, in my opinion, another objection to the findings of the assessor. The defendant corporation was a general dealer in bicycle supplies at Chicago, and might be expected to want forgings for every kind of bicycle used in the western part of the United States. The only agreement about the prices of forgings was for the following parts, for each of which a single price was stated, viz. : " cranks," " hangers," " head-lugs," " fork crowns," " clamps," " sprockets 15, 16, 17, 18," " 19, 20, 21 sprockets," "small rear sprockets," "seat posts, ordinary," "seat posts, extraordinary," "rear forks." The assessor found as follows:

" I find that the parties did not then contemplate that defendant should be restricted to ordering such forgings alone as were there enumerated.

" There were other forgings which dealers in bicycle supplies like the defendant are fairly supposed to supply on orders. In the fair conduct of a business of selling bicycle forgings the dealer is sometimes called upon to fill a small order of a peculiar pattern, or to piece out a quantity which may have run short, when but little real profit can be realized at any price which the maker in fact fixes.

" The various kinds enumerated in said list in writing, as well as those not enumerated, varied themselves in design and pattern according to the fancy of the bicycle maker. Each separate design and pattern required its own pair of dies in order to forge it to be placed in the forge hammer for its production.

" With reference to the prices agreed· upon no specific agreement was stated as to the number of the enumerated kinds to be ordered at one time, or of one pattern.

" Among the designs of such forgings, generally speaking, there was but little variation in the cost of production provided the dies, when made, could be used continuously, and upon quantities of from 5,000 to 10,000.

"It was true, however, that kinds of bicycle forgings were known which could not be produced except at a loss on the prices stated, because of peculiarity in shape, and delay and difficulty in their production. And it was also true even of the kinds enumerated, and not of peculiar design, such small quantities could be ordered that no profit could be made at prices stated. . . . I find that by the list and memorandum above referred to, and by the letters of April 4th and 8th, the parties did in fact agree upon the prices to be paid for the production of the principal kinds of bicycle forgings of standard, and not peculiar makes, such as would be produced naturally in large quantities, so as to yield a reasonable profit, both because the parties contemplated that such forgings would be the large part of the goods to be supplied by defendant to its customers, and also would be the principal part of the production of plaintiff under the contract, and that the kinds were enumerated and the prices, therefore, adopted which each party intended should be the principal business under the contract.

" I find that the parties contemplated and intended, when the list and memorandum was agreed upon, that a similar scale of

prices and profits should be agreed upon thereafter in case of the placing of orders by the defendant for kinds of forgings not enumerated in the list, except in the cases of occasional orders for small quantities, as above explained, when no real profit is reasonably expected."

It appears therefore, that the plaintiff's profits would depend on many matters which were uncertain, about which the contract was silent. A die must be made for every kind of forging. Different bicycle makers have different forms and sizes of most or all of the parts included in the agreement about prices. There is no statement in the original contract as to what drop forgings are included in it. If the kinds, and the quantities of each kind which the defendant was entitled to have made, were to be determined by mutual agreement from time to time, the fact that no such agreement was ever made is a sufficient reason why profits cannot be determined. The profits or loss of the plaintiff would depend largely on the amount that might be ordered and the quantity of each kind. If the right of the defendant to order any kind in any quantity was unlimited, there is no means of telling how he might have exercised that right, and what effect his exercise of it would have had upon the plaintiff's profits. The assessor's calculation of the cost of production is made subject to a proviso that "the dies when made could be used continuously and upon quantities of from 5,000 to 10,000." No one can know that upon the orders which the defendant would have given in meeting the demands of the market, they could have been so used. The assessor has found that in agreeing upon certain prices the parties had certain expectations and intentions in regard to the future state of the market, and has estimated profits, so far as he could, on the basis of the fulfilment of their expectations. But these expectations and intentions were not embodied in the contract and neither party was bound by them. The evidence tends to show that both parties were greatly disappointed in them, and if the defendant had gone on with the contract and kept the plaintiff's shop busy as well as he could, his orders might have been for such kinds and quantities as would have entailed upon the plaintiff a great loss.

All this is without reference to the fact that besides the kinds to which I have referred, there doubtless would have been orders

for other kinds of forgings about which there was no agreement as to the prices. The finding that "the parties contemplated and intended . . . that a similar scale of prices and profits should be agreed upon thereafter in case of the placing of orders by defendant for kinds of forgings not enumerated in the list," etc., is certainly too indefinite to warrant a computation of profits on such orders. Neither was bound by this contemplation and intention, and if the plaintiff found the scale was too low and he was suffering loss, he would decline to agree to prices for orders of new kinds of forgings without an advance. If the defendant found it was too high and was giving the plaintiff unreasonably large profits, he might insist that the prices for new and different forgings should be on a lower scale. What would a court of equity say to the terms of such a contract as this, upon a suit for specific performance of it?

It is a principle of law that loss of expected profits in the performance of a contract cannot be allowed as damages for the breach of it, unless these profits are susceptible of proof with a reasonable degree of certainty. Where they are speculative, hypothetical and contingent, so that their amount is merely conjectural, they cannot be properly proved and the courts will not allow them. *Central Trust Co.* v. *Clark,* 92 Fed. Rep. 293, 298. *United States* v. *Behan,* 110 U. S. 338, 344. *Watts* v. *Weston,* 62 Fed. Rep. 136, 138. *Todd* v. *Keene,* 167 Mass. 157. *Noble* v. *Hand,* 163 Mass. 289. *Bernstein* v. *Meech,* 130 N. Y. 354. *Loewer* v. *Harris,* 57 Fed. Rep. 368. No case has come to my knowledge in which the expected profits of an entire contract were allowed as a part of the damages for a breach of it, when there were such elements of uncertainty and conjecture in the estimate as appear in this case.

An estimate of the loss of profits has frequently been refused in assessing damages when the elements involved were much less uncertain. See cases cited above.

In the former decision of this case the court did not consider the question of damages further than to determine that the action could be maintained. This decision would be given full effect by holding that after an agreement upon the prices of certain forgings the contract had taken such form as to entitle the plaintiff to recover for his expense and loss incurred in waiting

and holding himself in readiness for the work, in the reasonable expectation that the defendant would send him orders for forgings whose prices had been agreed. I think that the plaintiff can recover no damages for loss of profits on the contract.