### R. H. WHITE COMPANY *vs.* JEROME H. REMICK AND COMPANY.

Suffolk.    December 11, 1907. — February 29, 1908.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Landlord and Tenant,* What constitutes relation.  *License.   Contract,* Performance and breach.  *Damages.*

By an agreement in writing between the proprietor of a department store and a dealer in sheet music, the proprietor did "give and grant unto" the dealer "the exclusive license and privilege of selling and dealing in sheet music within" his "premises," "the location to be assigned to" the dealer "upon the balcony floor of the building of" the proprietor of the store, "such space to be substantially forty feet in length"; the dealer agreed to furnish his own fixtures, to carry on his business as a music department of the store and to use the trademark of the proprietor of the store in his advertising, "to pay" a stipulated "rental in regular monthly instalments," and, if the stipulated sum was less than a certain percentage of his gross sales in the music department, he was to pay a sum proportionately larger.   There were stipulations for termination of the "agreement" in case of destruction of the premises or bankruptcy or insolvency of the dealer, and for a cessation of payments "of money or remuneration" in case of the premises becoming from certain causes unfit for use by the dealer.   There also was a provision that the dealer would "not assign or transfer this lease or contract or sublet said premises nor any part of the same," and, in case of violation of that agreement, it was provided that the proprietor of the store should "have the right to re-enter said premises and remove" the dealer "and his property"; and, under certain other specified circumstances, it was provided that he should "have the right forthwith to declare this contract null and void and to re-enter the premises and remove" the dealer "and his property therefrom."   *Held,* that the contract gave no interest in the land, but was merely a license to use a "location" in the store for specified purposes.

By a contract in writing between the proprietor of a department store and a dealer in sheet music, the proprietor of the store allotted to the dealer a "location" in the store and gave him a license to sell his goods there for a certain period of time, the dealer agreed that he would pay the proprietor of the store a certain sum of money and that he would "not assign or transfer" the contract, and it was stipulated that, in case the dealer should violate that agreement, the proprietor of the store should "have the right to re-enter said premises and remove the" dealer "and his property," and it also was provided that in case of a breach of the contract by the dealer, the proprietor of the store should "have the right forthwith to declare this contract null and void, and to re-enter the premises and remove" the dealer "and his property therefrom."   Before the expiration of the term of the contract, the dealer without the consent of the proprietor of the store sold and assigned his rights under the contract to a third person, who demanded to be allowed to remove the dealer's property.   Upon the proprietor's calling this fact to the dealer's attention, the dealer wrote to the proprietor that

he did not intend to proceed any further under the contract or to make any payments thereunder. The proprietor wrote to the dealer: "This sale and assignment constitute a violation of the contract and render the contract void, and I shall hold you responsible in damages for breaking the contract. Our failure to oppose the removal of the goods and fixtures by" the assignee "is not to be considered as a waiver of our claim against you for failure to fulfil the terms of the contract." *Held*, that, in writing the letter, the proprietor of the store was not acting and did not intend to act under the clause of the contract allowing him to treat the contract null and void and terminated upon a breach of it by the dealer, but that he was asserting and intending to assert his right under the general law to regard the contract as broken in its essence or as repudiated by the dealer, and to recover full damages therefor.

At the trial of an action of contract brought by the proprietor of a department store against a dealer in sheet music for breach of an agreement whereby the plaintiff allotted to the defendant a "location" in his store and gave the defendant a license to sell music in that space as a department of the plaintiff's store, and the defendant agreed not to assign the contract, it appeared that the defendant had assigned the contract to one who removed his goods from the plaintiff's premises, and that the plaintiff thereupon made use of the space thus made vacant to display goods of his furniture department. *Held*, that the measure of damages was the difference between what the plaintiff would have received if the contract had been fully performed, and what the plaintiff actually did receive, taking into account any benefit that he may have derived from the defendant's non-performance of the contract or from the plaintiff's use of the space formerly occupied by the defendant's music department.

The proprietor of a department store for a certain sum allotted a "location" in his store to a dealer in sheet music under a contract in writing whereby the dealer agreed not to assign the contract. The dealer broke the contract by assigning it and the assignee removed the goods of the dealer from the store. *Held*, that it was not only the right but also the duty of the proprietor of the store to exercise reasonable diligence to use the space abandoned by the dealer so as to decrease the damages resulting from the dealer's breach of the contract.

CONTRACT for breach of an agreement in writing. Writ in the Superior Court for the county of Suffolk dated July 11, 1906.

There was a trial before *Fox*, J., without a jury, at which it appeared that the plaintiff was a corporation conducting a large department store which occupied several adjoining and connected buildings on Washington Street in Boston, and was engaged in the sale at retail of a very great variety of articles, including goods ordinarily used for wear upon the person and for the furnishing of houses; and that the defendant was a corporation engaged in the business of publishing and selling sheet music.

The agreement which formed the basis of the action was

dated August 30, 1904. By its first paragraph, the plaintiff "for and in consideration of the sums of money hereinafter agreed to be paid, and further in consideration of the stipulations, conditions and agreements to be kept and performed by [the defendant] . . ., does hereby give and grant unto party of the second part the exclusive license and privilege of selling and dealing in sheet music, and for no other purposes, within the premises of [the plaintiff] . . . for a period of two years from and after October 1, 1904, unless terminated as hereinafter provided; the location to be assigned to [the defendant] . . . upon the balcony floor of the building of [the plaintiff's store], such space to be substantially forty feet in length." The second paragraph provided that all cash received from sales by the defendant on the plaintiff's premises should be paid to the plaintiff's cashier, to be later paid to the defendant. By the terms of the third paragraph, no contracts of the defendant with others than the plaintiff with regard to the conduct of its business on the plaintiff's premises should be made in behalf of or binding upon the plaintiff; but, in carrying on its business upon the plaintiff's premises, the defendant agreed to use the name "R. H. White Company, Music Department," and "in advertising sales of such goods" to use "the advertising trade mark" of the plaintiff "exclusively." The fourth paragraph provided for advertising by the defendant, and the fifth, sixth and seventh referred to methods in which the defendant was to receive and sell its goods. By the terms of the eighth paragraph the defendant was to furnish its own fixtures.

In the ninth paragraph the defendant agreed "to pay . . . a . . . rental . . . in equal monthly instalments." If the stipulated sum "should be less than an amount equal to fifteen per cent of the gross sales of the music department," then the defendant was to pay a stipulated proportionate sum in addition.

The tenth paragraph exempted the plaintiff from liability to the defendant caused by bursting or leaking of plumbing, water, gas or steam pipes of any kind or nature, the eleventh provided that the "contract" should "cease and terminate" in case of bankruptcy or insolvency of the defendant, and the twelfth provided that, in case of partial destruction of the premises

occupied by the defendant so that it could not use them, " the further payment of money or remuneration " by the defendant should cease until the premises were restored, and, in case of total destruction, " this agreement shall terminate and be annulled, and the payment of all money or remuneration thereunder " cease.

The substance of the thirteenth paragraph is stated in the first paragraph of the opinion. The fourteenth paragraph provided that, " in case of the violation by " the defendant " or any of its agents or employees, of any of its agreements in this contract contained," the plaintiff should " have the right forthwith to declare this contract null and void, and to re-enter the premises above described and remove " the defendant " and its property therefrom."

In the latter part of 1905, by consent of both parties, the defendant occupied premises on the fourth floor of the plaintiff's store instead of in the balcony, and was allowed to use a piano. The permission to use a piano was revoked in December, 1905.

On March 16, 1906, without the plaintiff's consent, the defendant executed an instrument under its corporate seal, which purported to convey to one Phillips all the stock of sheet music belonging to it and then located in the plaintiff's store, all fixtures then in that store used in connection " with the R. H. White Company Music Department, so-called," and " the good will of the trade and business of the music department of said store and of the trade name," and also " all its right, title and interest in and to " the agreement in writing between the plaintiff and the defendant dated August 30, 1904, " it being understood and agreed that . . . Phillips . . . shall carry out all the terms of said agreement and shall hold " the defendant " harmless from the payment of any sums of money provided for " therein.

Phillips presented the assignment to the plaintiff, and it wrote the defendant on March 23, 1906, calling its attention to the terms of the agreement of August 30, 1904, and stating " under the circumstances, we must decline to recognize Mr. Phillips in the matter and therefore look to you to protect the conditions of the contract." The defendant replied, stating that the assignment had been executed " at the suggestion of Mr. Barry,

our legal adviser in Boston," and referred the plaintiff to one Belcher, its eastern representative.   On March 28, 1906, Mr. Barry wrote to the plaintiff a letter, the substance of which is given in the second paragraph of the opinion, and on April 2 he and the treasurer of the plaintiff had a conversation, in confirmation of which Mr. Barry wrote to the plaintiff's treasurer that the defendant declined " to pay your company the amount alleged to be due, under" the contract of August 30, 1904, " on March 30, 1906."   On April 4, 1906, the plaintiff wrote to the defendant the letter, the substance of which is stated in the seventh paragraph of the opinion.

Phillips removed the defendant's goods and fixtures from the plaintiff's store in April, 1906, and thereafter and before April 15 the plaintiff occupied the space thus left vacant for the conduct of its own business by placing a part of its furniture thereon, namely, a number of chairs for display in connection with the plaintiff's furniture department; and customers of the furniture department were brought into the space by the plaintiff for the purpose of showing them goods.   The space was occupied by the plaintiff for the display of chairs, as above mentioned, until September 12, 1906, at which date it placed mechanics upon the space to erect partitions which divided it into different offices for use in connection with the furniture department, and this work was completed about October 1, 1906, and after completion the space was occupied by the plaintiff.

It was conceded by the defendant that the sum of $314 was due to the plaintiff under the contract up to the time when the defendant's goods were removed from the plaintiff's store.

The plaintiff requested the judge to rule that the measure of damages was the difference between what the plaintiff would have received if the contract had been fully performed, and what the plaintiff actually did receive, taking into account any benefit the plaintiff may have derived from the defendant's nonperformance of the contract or from the plaintiff's use of the space occupied by the defendant's music department.

The presiding judge, however, ruled as follows: " I assume that the plaintiff is right in its contention that the contract in the present case did not establish the relation of landlord and

tenant between the parties, but rather that of licensor and licensee. But on the other hand I see no reason why the fourteenth clause of the contract which permits the plaintiff in certain contingencies to declare the contract ' null and void ' should not be given the construction which was put upon a similar clause in a lease in *Sutton* v. *Goodman*, 194 Mass. 389. The result is that, the plaintiff having by its letter of April 4, 1906, exercised its option to declare the contract void, its right to damages based on the loss of future rentals is gone. The amount due from the defendant for the actual period of their occupancy is not in dispute "; and accordingly he found for the plaintiff in the amount which the defendant conceded was due, and the plaintiff alleged exceptions.

*H. LeB. Sampson*, for the plaintiff.

*T. J. Barry*, for the defendant, submitted a brief.

HAMMOND, J. Although the contract provides for the allotment of a " location " in the plaintiff's store within which the license to sell music shall be exercised by the defendant, and although in the thirteenth clause the licensee covenants that " it will not assign or transfer this lease or contract or sub-let said premises, nor any part of the same, and that in case said party of the second part [the licensee] shall violate this covenant and agreement, party of the first part shall have the right to re-enter said premises and remove party of the second part and its property," and although in the fourteenth clause it is provided that under certain circumstances therein set forth " party of the first part shall have the right forthwith to declare this contract null and void, and to re-enter the premises above described and remove party of the second part and its property therefrom," still the contract gives no interest in the land. It is not a lease, but a license ; and the use of those terms which are appropriate and common in leases cannot change its real nature in that respect.

By its conveyance to Phillips of its rights under this contract and of its stock of music then in the plaintiff's store, the defendant violated the thirteenth clause of the contract; and by its letter to the plaintiff under date of March 28, 1906, it notified the plaintiff that whether or not the contract prohibited it "from assigning or transferring the contract," or prohibited "a sublet-

ting, . . . [was] a matter which . . . [it was] ready to contest with . . . [the plaintiff] ; as also . . . [its] liability under said contract with . . . [the plaintiff] of August 30th, 1904, as . . . [it did] not intend to proceed personally any further under said contract, nor to make . . . [the plaintiff] any payments thereunder."

Upon the receipt of this letter, the plaintiff was face to face with the following state of things : The contract had several months longer to run. The defendant had sold to Phillips its stock and fixtures then in the plaintiff's store, together with the "good will of the trade and business of the music department of said store and the trade name," and had assigned and transferred to him all its "right, title and interest in and to" the contract; and it had given to the plaintiff notice of this transaction with Phillips, and also that it was ready to contend that the transaction was not prohibited by the contract; and further, that it intended to contest its liability under the contract, and in any event would go on no further.

The plaintiff did not want Phillips in the place of the defendant and declined to recognize him. In its letter of March 23, 1906, it says that it looks to the defendant "to protect the conditions of the contract." The transaction with Phillips was a plain violation of the thirteenth clause. The defendant had not only broken the contract, but refused to go on further with it. The breach went to the essence of the contract.

Under these circumstances what could the plaintiff do? Where a breach goes to the very essence of the contract, or where a party utterly refuses to proceed further under it, the innocent party may on the one hand consent to a rescission or consent that it shall no longer be in force and release the party who has repudiated it, or on the other hand he may hold the guilty party to the contract and sue for damages. And he may bring his action at once, even before the expiration of the time during which the contract was to run, and recover full damages. Nor is he compelled to hold himself ready to perform. The utter refusal of the other party to go on excuses him from holding himself in readiness. Indeed in many cases it is his duty to make a reasonable use of his time and opportunity so as to reduce the damage. *Parker* v. *Russell,* 133 Mass. 74.

*Paige* v. *Barrett*, 151 Mass. 67. *Cutter* v. *Gillette*, 163 Mass. 95. *Speirs* v. *Union Drop Forge Co.* 174 Mass. 175; *S. C.* 180 Mass. 87, and cases cited. See also *National Machine & Tool Co.* v. *Standard Shoe Machinery Co.* 181 Mass. 275. It is to be noted that the plaintiff's right to take either one of these courses is not based upon the fourteenth clause of the contract, but upon the general principles of law applicable to contracts of this kind. But this right to regard the contract as wholly repudiated and to bring an action for full damages does not arise upon every breach of a contract. A breach may be so slight as not to go to the essence of the contract, in which case the only remedy of the injured party may be an action of damages for that breach. A very familiar illustration of this principle may be found in actions upon building contracts.

The purpose of the insertion of the fourteenth clause was doubtless to avoid any question as to whether the breach (if any should occur) was of such gravity, or bore such a relation to the essence of the contract, as to justify a rescission of it by the party of the first part, and also to authorize it even upon the slightest deviation from the contract to eject at once the party of the second part. That at any rate was the legal effect of the clause. The relation of the parties was such as manifestly to make such a provision desirable, at least so far as respects the party of the first part. It was not needed for the case of any such actual refusal to go on as appears in this case, although of course it was applicable to such a case, but was of much wider application.

Under these circumstances and with these rights both under the general law and under this fourteenth clause, the plaintiff wrote to the defendant the letter of April 4, 1906. After stating that Phillips had shown the plaintiff what purported to be a bill of sale of the goods and fixtures in the music department of the store, and also an assignment of the contract of August 30, 1904, and that he had made a demand upon the plaintiff for permission to remove the goods and fixtures, the letter continues as follows: "We beg to notify you that this sale and assignment constitute a violation of the contract referred to and render the said contract void, and we shall hold you responsible in damages for breaking said contract. And our failure to oppose the

removal of the goods and fixtures by Mr. Phillips is not to be considered as a waiver of our claim against the Shapiro, Remick Company for failure to fulfil the terms of the said contract."

What is the fair construction of this letter? Which of the rights was the plaintiff asserting, — the right at common law to consider the contract utterly repudiated by the defendant and to seek full damages for the breach, or simply the right under the fourteenth clause to annul the contract and declare it terminated? One thing is plain, and that is that the plaintiff intended to hold the defendant responsible for damages. If the contract was avoided under the fourteenth clause there could be no claim for damages subsequent to the date of the letter. Another thing is clear, and that is that the plaintiff did not intend that its consent to the removal of the goods and fixtures by Phillips should be considered as a waiver of the claim against the defendant for failure to fulfil the terms of the contract. It is true that the letter says that the transaction with Phillips constituted a violation of the contract and rendered it null and void, but we think that the fair construction of the sentence is that this act itself of the defendant avoided the contract and not that the plaintiff was itself exercising the right conferred upon it by the fourteenth clause to avoid it. Reading the letter in the light of the circumstances under which it was written, we are of opinion that the plaintiff was not acting and did not intend to act under the power conferred upon it by the fourteenth clause to declare the contract void, but was asserting and intending to assert a right under the general law to regard the contract as broken in its essence or as repudiated by the defendant and to recover full damages therefor. There is nothing in this conclusion which is inconsistent with the case of *Sutton* v. *Goodman*, 194 Mass. 389, upon which the defendant relies. That case was decided upon principles peculiar to leases, and is not to be taken as affecting the general principles applicable to the breach of contracts in general. It has no application to a case like this.

The act of the plaintiff in making use of the floor space was no waiver of its right to recover full damages. It was not only the right but the duty of the plaintiff to exercise reasonable

diligence to use the space abandoned by the defendant so as to decrease the damages.

It follows that the ruling of the judge that the plaintiff, by its letter of April 4, 1906, had exercised its option to declare the contract void and that the plaintiff's right to damages based on the loss for rentals after that date was gone, was erroneous. The plaintiff was entitled to the ruling requested by it.

*Exceptions sustained.*