### MARSHALL'S, Inc., v. COLUMBIA RIBBON CO.

(Circuit Court of Appeals, First Circuit. July 15, 1924.)

No. 1710.

Sales ⬅️52(5)—Contracts held not completed by fixing of prices.

In an action by the seller for breach of contracts for manufacture and shipment of goods to defendant, prices to be fixed by seller at time of shipment, where the goods were never shipped, evidence *held* not to sustain plaintiff's allegation that the prices had been fixed and agreed to before time for shipment and that the contracts had been thereby rendered complete and enforceable.

In Error to the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Action at law by the Columbia Ribbon Company against Marshall's Inc. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Arthur S. Phillips, of Fall River, Mass., for plaintiff in error.

Elbridge R. Anderson, of Boston, Mass., for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is a suit to recover damages for breach of two alleged written contracts for the sale of hat bands

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by the Columbia Ribbon Company to Marshall's, Inc. Plaintiff had a verdict for $18,000. The crucial question is whether the defendant was entitled to a ruling that the contracts declared upon were incomplete and invalid, because lacking the essential element of prices legally fixed, so that, as defendant contended, it was entitled on the pleadings and the evidence to a ruling that the plaintiff could not recover.

Plaintiff's declaration sets up that about October 14, 1919, a written contract, No. 6960, was made, consisting of an "acknowledgment" and "confirmation" (stated below); that under this contract the prices for the goods sold were to be fixed by the vendor at the time of the shipment of the goods:

"And the plaintiff further says that on or about the nineteenth day of July, 1920, the plaintiff fixed the prices for the various articles manufactured and to be manufactured under the said contract and the defendant agreed thereto."

The other contract, No. 7736, is, except as to date, which was October 24, 1919, alleged to have been made in exactly the same way.

In the answer is a specific denial of any valid agreement as to prices.

Plaintiff and defendant had had business relations for many years. Plaintiff's factory and chief place of business was at Paterson, N. J., but it maintained a sales office in New York City. Defendant's factory and chief place of business was at Fall River, Mass., but it also had a sales office in New York City. The orders in question were placed by defendant in plaintiff's sales office; but the practice, after such orders were thus placed, was for the parties to exchange by mail a written "acknowledgment of order" by the plaintiff, and "confirmation of order" from the defendant, in which was the following:

"Delivery. First goods ready about 4½ months after receipt by seller of signed confirmation. Balance ready about 10–12 weeks after first shipment is ready."

Then follow provisions as to payment, quantities, qualities, not now material, and prices:

"Prices. It is agreed between the Columbia Ribbon Company and the purchaser hereof that the price or prices at which the within mentioned merchandise is or are to be sold, is or are to be fixed by the vendor at the time of shipment of goods."

On the back are seven "conditions," only 1 and 4 of which seem now pertinent. These are as follows:

(1) "It is agreed that delays or non-delivery of any of the goods specified in this contract shall not subject the seller to damages for breach of contract: Provided, however, that in the case of non-delivery, the same must have been occasioned by strike, lockout, fire, act of God, the elements, or any other unavoidable cause."

(4) "If goods are ready within two weeks after specified date of delivery, such shall constitute good delivery, but if the delivery of this order or any part thereof is delayed by reason of strike, lockout, fire, act of God, the elements or any other unavoidable cause, the purchaser agrees to accept the goods at such time as the seller may be able to deliver: Provided, however, that the delay in delivery does not exceed the above specified delivery by more than four months."

As to price agreement, plaintiff cites the provision in the Sales Act, which reads:

"The price may be fixed by the contract or may be left to be fixed in such a manner as may be agreed, or may be determined by the course of dealing between the parties."

Plaintiff's learned counsel concedes in his brief that:

"An agreement incomplete with regard to any of its essential terms, and which is not subsequently completed, may not be a valid and enforceable contract; still the principle is that, where those terms are later fixed, the contract becomes valid and binding."

But he relies upon the proposition that:

"It is no objection to a written contract if some of its terms are to be fixed by something to be done in the future if that something is done before action is brought"

—citing Freeland v. Ritz, 154 Mass. at page 260, 28 N. E. 226, 12 L. R. A. 561, 26 Am. St. Rep. 244; Spiers v. Union Drop Forge Co., 174 Mass. 175, 54 N E. 497; Spiers v. Union Drop Forge Co., 180 Mass. 86, 61 N. E. 825. And on this legal theory plaintiff grounds an alleged agreement as to price, through letters set forth below.

But, before stating and construing this correspondence, enough of the facts should be disclosed, so that the letters may be construed in the light of the surrounding circumstances.

In the early spring of 1920 there were (at least in form) five unfilled orders (including 6960 and 7736 now in suit) outstanding between the parties. It was a time of frequent and serious labor troubles, affecting both plaintiff and defendant; so that the plaintiff, unless entitled to invoke the strike clause as a valid excuse for belated delivery, was in default, as the period of about five months fixed in the contracts for first deliveries under these orders placed in October, 1919, had already expired.

On April 1, 1920, the plaintiff issued a circular letter to its customers, including the defendant, setting forth that during the last few weeks it had been approached by customers and asked to cancel outstanding orders. Plaintiff therefore suggested that the customers go over their—

"orders and let us know whether you desire any of them canceled. * * * The only selfish reason we have in writing you as above is the fact that we are behind on deliveries, due to no fault of ours, and by ridding ourselves of certain orders with the consent of customers, we would be in a position to catch up on delivery. * * *"

In May, 1920, the plaintiff sent its sales agent, McLaughlin, to Fall River to see the Marshalls. He took with him a list of the goods covered by these five orders, and went over it with Robert Marshall, the defendant's president. Defendant claims, as one defense to the suit, that at that time, in consideration of the defendant's waiving its asserted right to cancel all five orders, because of delayed delivery, it agreed with plaintiff, through McLaughlin, that it would accept the goods under three of them, numbered 1735, 1852, and 7346, and that Nos. 6960 and 7736, on which this suit was brought, should be canceled.

This contention is consistent with plaintiff's written statement of April 1, supra, that it was "behind on deliveries," and therefore suggested that its customers consider, and discuss with it, cancellations.

For present purposes it is immaterial that McLaughlin denies making such agreement to cancel, that plaintiff denies McLaughlin's authority so to agree, and that certain letters written by some one in the defendant's concern were arguably inconsistent with defendant's claim.

In June, the plaintiff, at the defendant's request, delayed shipping goods then ready and due under the other three contracts. But on July 10 the plaintiff wrote that it was "very hard up for space and money," and sought "permission to ship in some of your goods." On July 15, Robert Marshall, who had been ill with a paralytic shock, replied to the plaintiff's letter of July 10, saying:

"I received your letter of the 10th this morning, and as I have been away from the factory for a few days, it has been neglected to be answered.

"Of course, you are naturally aware that we still have our strike on here, but in a small way are gradually starting up again.

"Concerning the bands that you have there that you owe us, I have no means of knowing what they are.

"If you will kindly send me a list, giving me the widths, colors, prices and quantities, I will check them up and see what I am going to need, and just what I can allow you to ship in."

The plaintiff's fundamental contention is that by this letter defendant requested plaintiff to fix prices under contracts 6960 and 7736.

In reply the plaintiff, on July 20, set forth a detailed list of the goods, with prices covered by all five orders, including 6960 and 7736, and added:

"All of the goods on pattern 234, contract 1735, also all of contracts 1852 and 7846, are woven and ready for delivery.

"We have part of pattern 2905, contract 6960, woven; so, if you need any of same, we will be prepared to make shipments. This order is weaving.

"Work on contract 7736, pattern 294, was stopped as per your instructions, but the warps are all made. and as soon as you instruct us to go ahead we will pick out other looms, inasmuch as we are running other orders on those we intended your order for. We would like to send in all of the first two contracts, and hope you can see your way clear to take them now."

It thus, and otherwise, appears that no part of the goods covered by the two orders now in question were then ready for shipment. The goods covered by contract 6960 were shipped about September 13; those covered by contract 7736 were never shipped.

The plaintiff's letter indicates that it did not then even contemplate shipment of goods under these two orders. It said:

"We would like to send in all of the *first two* contracts and hope you can see your way clear to take them now."

It is therefore difficult to see upon what theory it undertook to fix prices under contracts 6960 and 7736, assuming, in its favor, that plaintiff did not concede the defendant's claim that they had been canceled. Parenthetically, we observe that, with such rapidly falling prices as occurred in 1920, a buyer would not naturally ask the seller to fix prices before delivery. Only a very plain request so to anticipate would warrant a seller in assuming a purpose so prejudicial to the buyer. At any rate, it takes two to make a bargain; and, in re-

ply to the plaintiff's letter of July 20, the defendant on July 28 wrote, giving shipping instructions as to certain goods, and adding:

"Contracts 6960 and 7736, we were under the impression that both of these had been canceled. Do not weave any more of them."

In these three letters must be found the agreement to fix prices, if there was any.

The court's instructions on this price point were as follows:

"I was asked to rule during the course of the proceedings that the contracts were not enforceable, because they failed to state specifically the prices that were to be paid by the defendant for the goods, but I have denied that request, and am charging you that the contracts are valid and binding upon the parties, notwithstanding the fact that the prices do not appear in the contracts themselves, because the Sales Act under which this contract was made provides that:

" 'The price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed.'

"Now, the manner of fixing the price in both of those contracts was agreed upon between the parties, and the defendant agreed to pay whatever price the plaintiff fixed at the time of the delivery of the goods. That was the agreement. There was no uncertainty about what the price was ultimately to be. And when that price was fixed, the obligation of the defendant to pay became very definite and easily ascertained; and the contract was therefore not indefinite or void because of indefiniteness, if you find that the price was fixed— a matter to which I will refer later."

After instructions on other points the court continued:

"It is also suggested by the defendant that it was justified in repudiating the contract because prices were not fixed at the date of delivery. Well, the prices were fixed some two months prior to delivery. It is true that under the terms of the original contract the defendant had a right to have the prices fixed when the goods were delivered. But here again, if the defendant's own act contributed to this departure from the terms of the contract, or the parties subsequently agreed that the price might be stated at a different time, then it furnishes no justification for repudiation of the contract. And the letter of July 15th becomes important in that connection. It has been discussed before you both by the counsel for the plaintiff and counsel for the defendant. And if you find that in that letter the defendant requested the plaintiff to give prices on the goods that were due under these contracts, then the defendant cannot now come into court and complain that the prices were given too early, because they were given at its request, and we can presume they would not have been given contrary to the terms of the contract unless such had been requested by the defendant or assented to by the defendant."

The language used makes it at least doubtful whether the jury understood that this issue was, as plaintiff's counsel argues, submitted for their determination. But, even if submitted, this would not help the plaintiff; for the construction of these letters was for the court and not for the jury. Hamilton v. Insurance Co., 136 U. S. 242, 255, 10 Sup. Ct. 945, 34 L. Ed. 419; 2 Williston, Contracts, § 616, and cases cited.

It was for the court to say whether the three letters of July 15, July 20, and July 28 spelled out a written agreement between the plaintiff and defendant, fixing prices on the goods covered by the two orders in question. The burden was on the plaintiff to show affirmatively such agreement. We think it plain that the letters cannot be given such construction.

The language used in Robert Marshall's letter of July 15:

"Concerning the bands that you have there that you owe us, * * * if you will kindly send me a list, giving me the widths, colors, prices, and quantities, I will check them up and see what I am going to need and just what I can allow you to ship in,"

—on its face refers to goods on which delivery was then due. It is not a request for pre-fixing prices on goods, few, if any, of which had then been manufactured, and none of which either party contemplated shipping at that time. Entirely apart from Marshall's contention—that the contracts in question had been canceled—there was no warrant for the plaintiff to treat the language used in this letter as a request for pre-fixing prices, on a falling market, for goods which on plaintiff's own theory would not be ready for delivery for many weeks. There was no request by defendant that plaintiff fix prices under contracts 6960 and 7736.

It follows that the plaintiff's attempt in its letter of July 20 to fix prices under these contracts had no effect.

Moreover, the defendant's reply of July 28, in which it stated that it was "under the impression that both these contracts had been canceled," effectually disposed of any otherwise possible contention that it had requested prices and then assented to the prices fixed by plaintiff. An assertion that the contracts in question had been canceled was the most effective sort of negative to a proposition of price fixing under those contracts.

We think it entirely plain that there was never any agreement as to prices under these contracts.

Plaintiff neither pleaded nor offered evidence of any prices fixed at any other time or in any other way. In fact there was never any delivery of any of the goods in question, although most, if not all, of the goods covered by contract 6960 seem to have been manufactured, and tendered and rejected about September 13, as above noted. None of the goods covered by contract 7736 were ever completely manufactured or tendered. The case was tried below and is presented here on the theory that the prices were fixed by this correspondence on July 20, 1920, and in no other way. Failing on that point, the plaintiff made out no case.

It follows that the defendant was entitled to the ruling requested, that on the pleadings and evidence the plaintiff could not recover.

As this is enough to dispose of the case, we need not discuss the alleged erroneous rulings as to McLaughlin's authority to agree upon a cancellation, or as to the scope and effect of the strike clause, or as to damages.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the plaintiff in error recovers costs in this court.