### BARNETT et al. v. BEGGS.

(Circuit Court of Appeals, Eighth Circuit. October 1, 1913.)

No. 3,714.

1. CONTRACTS (§ 322*)—ARCHITECTS' SERVICES—FINDINGS.

In an action for architects' services, evidence *held* to sustain the jury's finding that plaintiffs only submitted sketches which were subject to change, and that no completed plans and specifications were ever delivered.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 322.*]

2. WORK AND LABOR (§ 9*)—EXPRESS CONTRACT.

Where there is an express written contract for services between the parties, plaintiff, to recover for work and labor done, must declare on the written contract so long as it remains in force and unrescinded, and cannot recover on a quantum meruit, under the rule that implied promises exist only when there is no express promise between the parties.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 23, 24; Dec. Dig. § 9.*]

3. CONTRACTS (§ 282*) — ARCHITECTS' SERVICES — PLANS SATISFACTORY TO OWNER.

Where a contract for architects' services required plans and specifications satisfactory to defendant, plaintiffs were bound to furnish plans which were satisfactory to defendant, and not merely such as ought to have been satisfactory to him.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1284–1289; Dec. Dig. § 282.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by George D. Barnett and others against John I. Beggs. Judgment for defendant, and plaintiffs bring error. Affirmed.

P. H. Cullen, of St. Louis, Mo. (W. S. Campbell, William R. Orthwein, Thomas T. Fauntleroy, and Shepard Barclay, all of St. Louis, Mo., on the brief), for plaintiffs in error.

Morton Jourdan, of St. Louis, Mo., for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. The plaintiffs are a firm of architects, and bring this action to recover for services which they claim to have performed for the defendant in the preparation of plans and specifications for a residence to be erected by him for his daughter in St. Louis. The complaint contains two counts. The first proceeds upon an express contract by virtue of which plaintiffs were entitled to 2½ per cent. of the cost of the building. This count alleges that plaintiffs completed plans and specifications in the month of March, 1907, in accordance with the terms of their contract, and asks to recover the stipulated compensation of 2½ per cent. The second count proceeds upon quantum meruit, and alleges that, after the plans and specifications were prepared in accordance with the contract, the defendant directed plaintiffs to make changes therein, requiring additional service for revising and redrawing the same. For these services they seek to recover $3,146.68. Defendant finally abandoned the project of building the residence, and admits that he is liable as for a complete set of plans and specifications, but denies any other liability. The trial court directed a verdict upon the first count of the complaint, pursuant to the admission above referred to, and submitted the issues on the second count to the jury, who returned a verdict for nominal damages of $1. Plaintiffs sue out this writ of error.

The contract is contained in a letter written by plaintiffs to defendant on August 15, 1906, which reads as follows:

"Complying with your request of August 14th, in regard to making plans for your residence, will say that our charges are as follows:

"One per cent. for preliminary studies; and for preliminary studies, plans, and specifications, two and one-half per cent., and preliminary studies, plans, and specifications and superintendence, or what is known as full professional services, five per cent., upon the cost of the building.

"Our method of proceeding with sketches for residence is as follows:

"First, we make an original draft of floor plans, and submit same to the owner for his approval. When the owner has noted alterations desired upon this plan and signified changes, a second tracing is made from the first, preserving the first, with all notes, for reference.

"This proceeding is continued through as many sets of sketches as are necessary to bring the residence to what you deem, in your mind, to be most satisfactory, and at the same time complying with the proposed cost.

"When this has been done, we take an approximate estimate on the cost of building. If this is satisfactory, the general plans are made, and the building is put upon the market for bids from responsible contracting firms.

"If the bids are satisfactory, the contract is awarded, and the building is supervised until the completion of the work.

"We wish to state that, if the work is placed in our hands, it shall have our personal attention in all its branches, and we will consider all details in connection with same, in a most careful manner.

"We are very desirous of doing this work for you, and will guarantee absolute satisfaction in all particulars.

"If this proposition is satisfactory to you, we would thank you to let us know in regard to same.

"We have been doing some slight studying since I spoke to you the other afternoon along the lines that you outlined, and are quite enthusiastic in regard to the beauty of a house constructed in this manner.

"The natural style for a rough granite house is the Romanesque. We have a great many most valuable architectural works on this beautiful style."

Defendant accepted this offer, and plaintiffs began the work of preparing sketches. This proceeded for some months. There was voluminous correspondence between the parties, which is set forth fully in the record. In these letters neither the plaintiffs nor the defendant kept clear the distinction between "sketches" and "plans." What must have been mere sketches are referred to in the correspondence by both parties as plans. For example, on December 19, 1906, plaintiffs wrote the defendant as follows:

"We are sending you to-day complete set of plans revised in pencil."

It is quite clear, however, from defendant's answer, that he did not regard the documents as plans, for he makes numerous suggestions for changes, and closes his letter with the following language:

"With the changes noted in drawings and the above suggestions given consideration, and the alterations made by me worked in to scale, I think we shall be about ready to ask for preliminary estimates."

It will be seen, from the original offer of the plaintiffs, that preliminary estimates were to be based, not upon completed plans, but upon sketches which had reached the stage when they were satisfactory to defendant. It is quite clear that the "complete set of plans" referred to in plaintiffs' letter of December 19th were regarded by the defendant as sketches, for he proceeds to suggest in his reply numerous changes and alterations. Plaintiffs accepted this view, and replied, stating that they would make the suggested changes. Mr. Haynes, one of the plaintiffs, testifying as a witness, stated that they started on the plans near the close of the year 1906, and changed them repeatedly until about July, 1907. Mr. Barnett says:

"We had made all these various preliminary sketches and submitted them to Mr. Beggs, and then we had gone ahead with the finished plans and submitted several sets of finished plans, that were changed again and again, as is shown in the letters repeatedly. The plans were rubbed until there were holes in the tracings in all of them from being erased—constant and continuous changes."

[1] There is much other evidence of similar purport, from employés in plaintiffs' office. The evidence, in our judgment, fails to show that any final plans were completed in March, and accepted by the defendant. The correspondence in May and June proceeds the same as in the earlier months, the defendant making numerous suggestions as to changes, and the plaintiffs accepting those suggestions and modifying the plans accordingly. In July one of the plaintiffs

208 F.—17

was invited to visit Milwaukee to examine a residence there which had impressed the defendant's taste. Numerous notes were taken, and the plans were to be modified accordingly. Defendants on one occasion complained of being compelled to make these frequent changes, and stated that their expenses were largely increased as the result; but they at no time intimate that they have ever performed their contract as to plans and specifications, and that additional work will have to be paid for on the basis of its reasonable value. The issue was submitted to the jury to determine whether the plaintiffs completed plans and specifications in March that were satisfactory to and accepted by the defendant, and they were instructed that if such was the case defendant would be liable for services subsequently rendered. The jury have found that issue in favor of defendant, and the evidence, in our judgment, abundantly supports the finding. Plaintiffs requested the defendant to make payment on account from time to time, but at no time did they intimate that the definite 2½ per cent. was due them by reason of the fulfillment of their contract for "preliminary studies, plans, and specifications." It seems to us quite clear that plaintiffs were willing to treat their work on these subjects as incomplete, acting all the time upon the hope that plans would finally be arrived at that would be acceptable to the defendant, and that he would then build the residence, and they would get the full commission of 5 per cent., with the professional advantage which would accrue to them as architects for such a building. It was not until it became clear that defendant would not build the house that the claim was put forward that they had completed studies, plans, and specifications in March, and were entitled to the 2½ per cent., and as to services rendered by them after that date they were entitled to additional compensation.

[2] It is difficult to pass from a liability under an express contract to one upon quantum meruit. If that can be done, there would certainly have to be a very clear and definite understanding on the part of both parties that the services under the express contract had been completed.

"The rule is that, if there be an express written contract between the parties, the plaintiff, in an action to recover for work and labor done, * * * must declare upon the written agreement so long as the special agreement remains in force and unrescinded, as he cannot recover under such circumstances upon a quantum meruit. * * * Implied promises or promises in law exist only when there is no express promise between the parties—'expressum facit cessare tacitum.' Hence, says Chitty, a party cannot be bound by an implied promise, when he has made an express contract as to the same subject-matter; which is certainly sound law, unless the express contract has been rescinded or abandoned." Hawkins v. United States, 96 U. S. 689, 697 (24 L. Ed. 607).

The law, as well as business candor, required the plaintiffs, if they expected to make a claim for work upon plans and specifications outside of their written contract, to bring that subject clearly and unequivocally to defendant's attention. This they wholly failed to do.

Plaintiffs build up a somewhat impressive argument in this way: They say that under the contract they were not entitled to 2½ per

cent. until they had furnished plans and specifications which were satisfactory to defendant. Then as the second step they say that defendant admitted, both personally and by his counsel, that he was liable for 2½ per cent. They say finally that from this premise the conclusion necessarily follows that plans and specifications were furnished which were satisfactory to the defendant. Conceding the force of this reasoning, we do not think it made a case which would justify the court in declaring as a matter of law that plans and specifications were supplied by the plaintiffs which fulfilled their obligations under the contract. At most the showing simply made a case for the jury. The admission of liability by the defendant it seems to us may be more fairly explained upon the ground that defendant, having abandoned the project of building the house, and having put the plaintiffs to a large amount of labor which they performed for him, properly conceded that he was liable to the same extent that he would have been if plans and specifications had been completed and accepted by him. We do not think it was meant to admit all the averments of the first count of the complaint, but simply to admit a liability of 2½ per cent. of the estimated cost of the building, for all that plaintiffs had done.

[3] The error mainly relied on is the following language in the charge of the trial court to the jury:

"It was the duty of the plaintiffs under the contract to make plans and specifications for a residence which would be satisfactory to and approved by the defendant; and it was alone for the defendant to determine whether the plans and specifications of the proposed house were satisfactory to him."

The thought here expressed is repeated in other parts of the charge. Plaintiffs complain that this language left defendant's liability to his mere whim or caprice. There are two answers to this complaint. First, there is no evidence in the record that the defendant's conduct was arbitrary or capricious; second, the language was in strict accord with the law. The contract required the plaintiffs to furnish plans that were satisfactory to the defendant. This did not mean plans which a jury of 12 men might say ought to have been satisfactory to him. The law is well settled that in matters of taste a defendant may condition his liability upon his being satisfied. Speaking of such cases the Court of Appeals of New York says, in Crawford v. Publishing Co., 163 N. Y. 404, 407, 57 N. E. 616, 617:

"The plaintiff did not agree to satisfy a court or jury, but undertook to satisfy the publishers. It was their taste, their fancy, their interest, and their judgment that was to be satisfied."

The authorities are collected in Wald's Pollock on Contracts (3d Ed.) 51, and 9 Encyclopedia of Law and Procedure, 618, where the rule is stated as follows:

"The personal thread which runs through agreements relating to matters of fancy, taste, or judgment has caused a unanimity of judicial opinion that here at least a promisee is practically debarred from questioning the grounds of decision on the part of the promisor, or investigating its propriety. The courts refuse to say that, where a man agrees to pay if he is satisfied with a thing, he can be compelled to pay on proof that some one else is satisfied with it. They recognize that in matters of fancy, taste, or judgment there

is no absolute standard as to what is good or bad, and leave each man free to act on his ideas or prejudice as the case may be."

We do not deem the other errors of sufficient importance to require separate consideration.

The judgment is clearly right, and is affirmed.