GILMAN v. LAMSON CO.

LAMSON CO. v. GILMAN.

(Circuit Court of Appeals, First Circuit. June 1, 1916.)

Nos. 1141, 1142.

1. CORPORATIONS ⬤⇒456—CONTRACT FOR ATTORNEY'S SERVICES—RIGHT TO TERMINATE.

A contract by a corporation for the services of an attorney for a fixed term, but providing that it might be terminated by the corporation at any time if the services were "not satisfactory to the board of directors" by a vote of the board, which vote, however, should not be taken until the employé has an opportunity to be heard at a meeting "upon the cause or reason of such termination," required some substantial cause as a ground for its termination, and the fact that the directors voted to terminate it was not conclusive of their right, and did not foreclose inquiry as to whether their action was taken in good faith because of dissatisfaction with the services, or for other reasons.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1806; Dec. Dig. ⬤⇒456.]

2. TRIAL ⬤⇒251(4)—INSTRUCTIONS—ACTION FOR BREACH OF CONTRACT.

In an action by the attorney for damages for wrongful termination of such contract, it was not error to refuse to instruct that if a majority of the directors acted in good faith it was sufficient to validate their action, where it was a question in issue whether certain of the directors did not act without personal knowledge or belief as to the matters involved and vote as they did, not because of any dissatisfaction on their part, but because of misrepresentations made by others.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 591; Dec. Dig. ⬤⇒251(4).]

3. CORPORATIONS ⬤⇒521—ACTIONS FOR SERVICES—INSTRUCTIONS—BURDEN OF PROOF.

In such action the defense was the termination of the contract by a vote of the directors, but on the trial the case turned upon the subordinate question whether the directors so voted in good faith because they were honestly dissatisfied with the services or for other reasons, and that was the only issue submitted to the jury. Held, that the court properly instructed that the burden of proving that the contract was terminated in accordance with its terms rested on defendant, but that, having so instructed, it was error to refuse to clearly instruct that the burden upon the issue of good faith was on plaintiff.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2094-2098; Dec. Dig. ⬤⇒521.]

4. CORPORATIONS ⬤⇒519(2)—ACTION FOR SERVICES—EVIDENCE—PERFORMANCE BY PLAINTIFF.

The contract in suit being a renewal of a prior five-year contract, it was competent for plaintiff to introduce evidence, as bearing on the issue of good faith in terminating the contract, to show that the standard of performance of services was the same under the new as under the old contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2085, 2088; Dec. Dig. ⬤⇒519(2).]

5. COURTS ⬤⇒352—OBJECTION TO EVIDENCE—STATEMENT OF GROUNDS.

In the federal courts it is not sufficient to state that objection is made to the admission of evidence without at the same time, stating specifically the ground of the objection.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926–932; Dec. Dig. ⬤⇒352.]

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. COURTS ☞367—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.
    Where, at the time of the making of a contract, to be performed in the state where made, there is a settled rule of decision in that state as to the damages recoverable for its breach, such rule governs in an action for its breach in a federal court.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. ☞367.]

7. DAMAGES ☞124(1)—BREACH OF CONTRACT.
    . On recovery against a corporation for the wrongful termination of a contract by which plaintiff agreed to act as counsel for defendant for a term of five years for an annual fee, which contract had been partly per- .formed, plaintiff was entitled to recover the present value of what would have become due under the contract if it had been fully performed.
    [Ed. Note.—For other cases, see Damages, Cent Dig. §§ 326-329; Dec. Dig. ☞124(1).]

8. CORPORATIONS ☞521—TERMINATION OF CONTRACT.
    It was error for the judge to refuse to instruct a jury that the burden is on the plaintiff to prove that the termination was invalid by reason of bad faith on the part of the directors in voting to terminate it.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2094-2098; Dec. Dig. ☞521.]

In Error to the District Court of the United States for the District of Massachusetts; Jas. M. Morton, Jr., Judge.

Action at law by Edwin C. Gilman against the Lamson Company. Judgment for plaintiff, and both parties bring error. Reversed on defendant's writ of error.

Herbert Parker, of Boston, Mass. (H. Ware Barnum, Charles F. Rowley, and Elder, Whitman & Barnum, all of Boston, Mass., on the brief), for E. C. Gilman.

Boyd B. Jones, of Boston, Mass. (William H. Brown, of Boston, Mass., on the brief), for Lamson Company.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

PUTNAM, Circuit Judge. This was a suit at common law in which there was a verdict for Gilman, reduced on a motion for a new trial from $24,000, by the sum of $2,209.76. Suit was brought in the District Court for the District of Massachusetts by writ dated on the 19th day of August, 1914, and variously amended; but we have no occasion to elaborate the original declaration or the various amendments. The verdict was returned on the 12th day of March, 1915, and judgment was entered for the plaintiff on the 26th day of July, 1915, for $21,792.24, which, of course, included some interest from the date of the verdict.

There was also a special verdict entered on the same day as the general verdict, as follows:

"Was the action of the board of directors in terminating the contract taken in good faith, because the plaintiff's services were not satisfactory to it?"

The jury answered, "No."

The motion for new trial was based upon two alleged grounds: One was that the verdict was against the law, the evidence, and the

weight of the evidence; the other was that the damages were excessive.

No objection was taken to the finding of the special verdict, and there were no exceptions arising therefrom either as to the form or the substance of the verdict, or in any way whatever, so the fact that a special verdict was taken in the form we stated raises no issue in the case.

The action was based upon the breach of contract appearing by the agreement, of which the following is a copy:

"Boston, Mass., July 17, 1908.

"Edwin C. Gilman, Esq.,

"6 Beacon Street, Boston, Mass.

"Dear Sir:—We hereby agree in behalf and representing the Lamson Consolidated Store Service Company, to employ you as counsel for this company from July 1, 1908, at a yearly stipend of seven thousand dollars for the term of five years, to act in matters that may be referred to you by the undersigned, or by the said Lamson Consolidated Store Service Company.

"Provided, however, that this contract may be terminated at any time, if your services are not satisfactory to the board of directors, by a vote of the board of directors, which vote, however, shall not be taken until you, if you so desire, shall have had an opportunity to be heard by said board of directors at a meeting upon the cause and reason of such termination. In case this contract is terminated as above provided, you are to receive payment for your services to the time of termination of the contract. The amount to be a proportionate part of the yearly stipend as above provided.

"In witness whereof, we hereby subscribe ourselves

"Yours very truly,                            [Signed]    Oakes Ames,
                                              "[Signed]    Gilmer Clapp,"

"Special Committee of the Executive Committee of the Lamson Consolidated Store Service Company."

"Boston, July 21, 1913.

"This contract is hereby extended for the term of five years from July 1st, 1913, upon the same terms and conditions.

"[Signed]    The Lamson Company,
                                              "By Gilmer Clapp, Treasurer."

It will be noted that the suit was brought soon after the renewal of the contract was made, but during its currency, when it still had about four years to run; and it appears from the amount of damages awarded that the verdict was allowed to be taken, based upon the present value of the contract, computing to the time of its expiration by its terms. In that respect, the rule adopted by the Supreme Court of the United States was applied, and the full value of the plaintiff's services, in accordance with the terms of the contract, was allowed for and estimated in the verdict. As we will explain hereafter, it is claimed that this is not the rule of the local courts of Massachusetts, where the contract was made and was to be executed.

The brief for Gilman states the issues as follows:

"The decisive issues between the parties were whether the board of directors of the defendant company, in terminating its contract with the plaintiff, had acted in good faith, and whether, in truth, the contract was so terminated because the plaintiff's services were in fact 'not satisfactory to the board of directors.'"

[1] The first question we have to consider is the refusal to give the following instructions, per the eighteenth assignment of error:

"The vote set up in the defendant's answer, if passed by the board of directors, is conclusive evidence that the plaintiff's services were not satisfactory to the board of directors. The contract authorized the termination of the contract if the plaintiff's services were not satisfactory to the board of directors, and it is not for other persons to question the grounds of propriety of their decision."

The basis for this exception by the Lamson Company was the rule stated as follows:

"The personal thread which runs through agreements relating to matters of fancy, taste, or judgment has caused a uniformity of judicial opinion that here at least a promisee is practically debarred from questioning the grounds of decision on the part of the promisor, or investigating its propriety. The courts refuse to say that, where a man agrees to pay if he is satisfied with a thing, he can be compelled to pay on proof that some one else is satisfied with it. They recognize that in matters of fancy, taste, or judgment there is no absolute standard as to what is good or bad, and leave each man free to act on his ideas or prejudice as the case may be."

This rule in the form in which the Lamson Company seeks to apply it is stated in Barnett v. Beggs, 208 Fed. 255, 125 C. C. A. 455, decided by the Circuit Court of Appeals for the Eighth Circuit, in October, 1913. The efficient expression in that opinion is found on page 259 of 208 Fed., on page 459 of 125 C. C. A., as follows:

"The plaintiff did not agree to satisfy a court or jury, but undertook to satisfy the publishers. It was their taste, their fancy, their interest, and their judgment that was to be satisfied."

Then comes the quotation which we have already cited, and it is enough to say that all the cases relied on by the Lamson Company are in the same line as what is shown by the extract we have given from the Circuit Court of Appeals, in the case referred to. It is not necessary for us to go further into details in that direction.

The difficulty with this proposition as put by the Lamson Company is the peculiar phraseology of the contract in this particular case. It contains some expressions of a very specific and substantial character, differentiating it entirely from all the cases relied upon by the Lamson Company. It provides for a hearing of Gilman by the board of directors of the Lamson Company after notice. It provides also that the hearing should be "upon the cause and reason of such termination." This in no way characterized a contract which could be determined by the "taste" or the "fancy" of the corporation, but positively indicated some substantial "cause," which, of course, was far remote from "taste" or "fancy." This positively agreed for an investigation of the merits of some matter involved in the proposed termination of the contract and a hearing in reference thereto, and, of course, an adjudication by the directors in reference to the same, with all the facts brought to the surface bearing upon any such "cause," or any such "reason" for discharging Gilman from the service in which he was engaged. It is possible that by going through the details of all that was said and done something might have appeared which was beyond the proper scope of investigation, but the case at this point was not put upon any discrimination in that direction, for the objection on

the part of the Lamson Company covered the whole topic, and the whole stands or falls together.

For the reasons we have given, it is plain that this assignment of error is not well sustained.

[2] We will now follow through the case in the order pointed out by the brief for the Lamson Company. The next proposition is that indicated as "2," as follows:

"2. It was error for the judge to refuse to instruct the jury that, if Keasbey, Mink, Loring, and Webster acted in good faith in voting to terminate the contract, the board acted in good faith."

The gentlemen thus named constituted a majority of the board of directors of the Lamson Company. Nevertheless, it cannot be said categorically that the court erroneously refused to instruct the jury substantially in the manner alleged by this assignment; but if we merely left the case there, without explaining what the court said in fact, we would omit considering the question which the court sought to consider, and which it did consider, namely, that Gilman alleged that the hostility on the part of two directors, Ames and Clapp, led up wrongfully to the result reached by the corporation.

Action was taken at a meeting of the board of directors at which a quorum of six directors was present; and the original good faith of the four directors named in this assignment of error, constituting a majority of the quorum, was expressly admitted. Therefore, if this assignment alleged all there was in the case, some difficulties would have been presented of a serious character, but it does not. The court enlarged considerably on this topic, covering several printed pages of the record. It started with the proposition that the jury must consider the question from what the action of the board of directors proceeded, whether it was from honest motives and views, or whether from dishonest motives and dishonest views. The court further said that the mere fact that a majority of the board was ignorant of the dishonesty practiced upon them by their associates does not save the defendant corporation, but that if the action of the board was procured by the representations of two of its members who were acting fraudulently and dishonestly, then there was not a proper termination of the contract. The court fully enlarged on these propositions. This was done with some interruptions by counsel; but these only tended to bring out the views of the court more clearly. Finally, the court said that, if there was any doubt about the matter, it would restate it; but we think there was no doubt about it as it was put, and that the court fairly explained the effect of the fact that some members of the board might have started out with honest motives, but might have been persuaded from them. Under the circumstances, if either party desired any correction of the instructions in detail, or any fuller explanation in reference thereto, it was its duty to ask the court specifically in reference to the point, and not rely on a categorical objection such as we are considering. Texas & Pacific Railway Company v. Volk, 151 U. S. 73, 77, 78, 14 Sup. Ct. 239, 38 L. Ed. 78. In the manner in which this topic is left, so general an exception does not

lie under the rule cited, as the treatment of the topic was generally correct, if not in all particulars absolutely so.

The position of the parties is illustrated, perhaps, by the testimony of Mr. Webster, one of the directors, who says that the discussion on the day when the contract was terminated lasted from half an hour to an hour; that he had been brought in contact with Mr. Gilman but very little; that he voted for terminating the contract with him, although he had no personal knowledge in reference to the matters involved. He denied that he was influenced by certain special matters, as, for instance, the length of the contract, etc. Thereupon, the counsel for Gilman stated to the court openly that he made no contention that any of the four gentlemen we are referring to was animated by any bad faith; that in substance the action of each was influenced by his belief that the statements at that meeting were true, with some details in the statement which we need not refer to. The witness Webster continued on cross-examination:

"I never had occasion to discuss with Mr. Gilman any of the matters that were within his province as counsel for the company, and I never for myself had any personal knowledge of any matter that led me to entertain any personal dissatisfaction with his services. I knew nothing of my own knowledge of any service that was not satisfactory. My action was due entirely to the representations and statements made at the meeting, and, accepting them as being true, I acted upon information, not upon personal knowledge."

This illustrates the position taken by the court to which we have referred, and shows its correctness.

[3] We next take up the subject-matter marked "3" in the brief for the Lamson Company, as follows:

"It was error for the judge to refuse to instruct the jury that the burden is on the plaintiff to prove that the termination was invalid by reason of bad faith on the part of the directors in voting to terminate it."

This appears as the seventeenth alleged error assigned, and is given without any explanation in the assignment of errors. In discussing it, the defendant in error, Gilman, relies entirely on the following extract from the charge given in his brief:

" 'As the contract is a contract to employ him for a period of five years, that is the agreement, unless terminated within that time, as is stated in the proviso; and, as the defendant here relies upon a termination of the contract in accordance with the terms of the proviso, it devolves upon the defendant to satisfy you that the five-year term of employment contemplated and agreed upon in the contract itself has been shortened by a termination of the contract in accordance with the terms of the proviso. In other words, and to put it shortly, the burden of proof is upon the defendant to satisfy you, by a fair preponderance of the evidence that this contract was terminated by vote of the board of directors because the services were not satisfactory, and that the vote was taken after opportunity to be heard as provided in the contract.'

"The question raised is where the burden of proof rests in support of a termination alleged to have been made in accordance with contract terms. The issue is obviously an affirmative one, and, in accordance with the universal rule, the burden is upon the party asserting such affirmative."

This is undoubtedly correct so far as it goes. It related to the case as a whole, while the request of the Lamson Company, to which we refer, related to a special topic which was developed in the course of

the trial. The issue was made directly, but subordinately, that the action of the board of directors was rendered invalid by reason of bad faith on their part. There is no question that, for some reason or other, some directors became dissatisfied; but the proposition was made by Gilman, and the trial turned on it mainly, if not entirely, that the dissatisfaction was not an honest one, and was brought about by the insistency of two of the directors, who, for some reason not clearly shown by the record, took a dislike to Gilman, and pursued him until they secured his discharge. On this proposition, according to the well-settled rule of law and judicial practice, the case split, and the burden which was generally on the Lamson Company then rested specifically upon Gilman; and what we have extracted from his brief, and from the charge as given by that brief, does not meet this specific question, as is easily developed by the application of Texas & Pacific Railroad Company v. Volk, 151 U. S. 73, 77, 78, 14 Sup. Ct. 239, 38 L. Ed. 78, already cited.

The question is whether in fact the court did, in substance give this request. There are many expressions in the charge which assume that the court understood the law to be as thus requested, and many parts of the charge, standing alone, might be accepted as the equivalent thereof; but the case evidently stood mainly on this, perhaps, incidental and subordinate question, and the case was so strongly urged in reference thereto, pro and con, that it became the principal question, as the one on which the case evidently turned; and the Lamson Company was entitled to a clear and positive instruction, substantially as asked for by it, which could not be misunderstood or be subordinated by other portions of the charge.

If rule 24 (150 Fed. xxxiii, 79 C. C. A. xxxiii) of this court had been strictly complied with, what occurred in this connection would have come out plainly to us; but, as the briefs were made and the case argued, it is not clear that we apprehend plainly all that occurred, especially as the references to the pages of the record are defective. It is impossible for us to ascertain, except by turning over the leaves page by page, what was said by the court on this specific question. It seems to us that the court gave confused rules on this important point, and therefore needed to be corrected. In order that we may be sure that we are right, we will reiterate.

The court commenced the early part of its charge by giving the general rule covering the case as a whole, which has been cited by Gilman, and which we have already stated; but during the progress of the trial the case had shifted. This incidental issue, as often occurs in the progress of a trial, became the substantial matter on which the jury was to pass, and which crowded out the more general propositions to which the court referred in that part of the charge we have already quoted.

The real issue on which the case ultimately turned, and which was the only issue ultimately passed on by the jury, was correctly presented by the court in the course of its charge, as follows:

"Now, the directors endeavored to terminate, and the defendant says that they did terminate, that contract in accordance with its terms; and they say

that you should be satisfied that the board of directors, by a vote properly taken, adjudged that his services were not satisfactory, and terminated the contract, and that that vote was taken, with the formalities and with the opportunity to be heard, as prescribed in the contract. And the crucial question here is not, it seems to me, whether there was adequate formal action, because I am of the opinion, and I instruct you, that as far as the formal action of the board was taken, that was sufficient. Although, as a matter of law, there may be some doubt upon the point, nevertheless, as a matter of law, I am inclined to think that those votes were sufficient, and I so instruct you."

The above made out the case so far as the burden rested on the Lamson Company; that is, so far as the burden rested on the Lamson Company, "the crucial question" was ultimately held by the court to be determined in favor of the Lamson Company, leaving, of course, the Court of Appeals to determine whether or not he was right in this conclusion. Then the court proceeded to what was the real subordinate issue to be determined by the jury, as follows:

"The question, therefore, comes, not upon the form of the termination, but upon whether the termination was exercised in good faith or not, because it was not sufficient under this contract that the board of directors should get together and adjudge that that contract was unsatisfactory, after the notice and other formalities called for—that was not sufficient; it was not the intention of that contract to put into the hands of the Lamson Company the right to terminate at its option; it was to be terminated only upon a judgment of the board of directors upon the unsatisfactory character of the services, made in good faith, good faith towards the company, and good faith towards Mr. Gilman; and the crucial question here is whether the alleged termination was or was not made in good faith. Did it proceed from the real dissatisfaction with his services, or did it proceed from other motives, from personal hostility, from personal dislike, from a view adverse to long-term contracts, from other reasons than those affecting the character of his services? If so, the termination was wrong. The termination should be validly exercised only upon a judgment of the services themselves."

Then follows a thorough discussion of many matters involved, pro and con, and the termination of this part of the discussion in the charge is as follows:

"So that, without attempting to discuss the facts with you, as I have already said to you, the defendants say that Turner and these other younger men did not like Gilman, could not get on with him, and they were the active force in there, and they came to Clapp and suggested to Clapp that they did not like Gilman, and thereupon these proceedings were instituted."

In this connection, the court further instructed the jury that, if this were a question relating to the installation of machinery, and the question arose whether or not there was dissatisfaction with it, the dissatisfaction would have to be "a reasonable dissatisfaction, a dissatisfaction which you as jurymen would say was reasonably well founded and justified. But this case," the court continued, "is not of that character"; and it proceeded:

"I instruct you that you need not concern yourselves with whether the dissatisfaction expressed by the directors in their vote was reasonably well grounded, or was not reasonably well grounded."

The court continued:

"It is sufficient to warrant the termination of the contract if the directors were in good faith honestly dissatisfied with the services, although the grounds of the dissatisfaction may have been trivial and unreasonable."

It further continued:

"The test is whether this termination of the contract proceeded from honest dissatisfaction, or whether it proceeded from other and illegitimate motives."

These, therefore, were the issues merged in the main issue on which the jury was to pass; that is, whether, for example, certain younger men did not like Gilman, could not get along with him, and were the active force in there, etc.; and, also, whether the grounds for dissatisfaction were not merely unreasonable, though in good faith; and also that the test was whether the termination of the contract proceeded from other than honest dissatisfaction or from illegitimate motives. All such things as these represent and illustrate a defense of a fraudulent or dishonest character, and represent matters not to be proved except by assuming the burden; and they come clearly within the illustrations of the rule of convenience explained by Greenleaf's work on Evidence, at section 74. Therefore they not only at the outset throw the burden on the party alleging them, in accordance with the usual and common statements of the text-writers and other authorities, but they come within the rule that parties alleging fraud or dishonesty must strictly prove it, and also emphatically within the rules of convenience which are applied in seeking out the practical determination of questions of the burden of proof. We can see no escape from the proposition that the instruction asked for by the Lamson Company, in accordance with paragraph 3 of the brief which we have cited, should have been given in the clear and efficient manner which we have pointed out.

The directors were not called on to specify in advance the reasons for this dissatisfaction, or to justify themselves in reference thereto. It rested on them to determine that Gilman's services were not satisfactory, after an opportunity to be heard, as provided in the contract; and no doubt the burden of proof in the case was with the Lamson Company to that extent. From what we have already said, it appears that the court so instructed the jury in the early part of its charge, and that that burden was assumed by the Lamson Company and satisfied; so the only question is whether, with reference to this new and subordinate issue, which became the main issue in the case, the court performed its duty in the manner we have pointed out. As to this, we have said that the Lamson Company was entitled to have the jury clearly and positively instructed in the manner requested by it, or in the substance thereof, and this put in such a manner that the position of the court in reference thereto would clearly and forcibly impress itself on the minds of the jury, without being thrown into the shadow by other elements, which, perhaps, under other circumstances, would have been fully justified.

The special verdict of the jury finding in favor of Gilman in this respect fails to meet the difficulty, because the error lies back of the verdict, so that, except for this error, this special verdict would not have been rendered.

Coming now to the question of whether or not the court performed its duty in reference to the requested instruction covered by this

point 3 of the brief of the Lamson Company, we have not even occasion to rely on the rules we have cited from Texas & Pacific Railway Company v. Volk, 151 U. S. 73, 14 Sup. Ct. 239, 38 L. Ed. 78, because, not only was there no mere omission of which complaint could be made, but positive misdirection. Further along in the charge, the court said:

"As to the opportunity to be heard, which is saved to the plaintiff by the terms of the contract, I am of the opinion that, if you accept the evidence—and I see no reason why you should not—as to what took place at the meeting, and, indeed, I do not know that there is any dispute upon that point, I am of the opinion that the proper formalities were observed."

The court continued:

"I think that there was such an opportunity afforded to be heard as the strict letter of the contract required."

Then follows some discussion as to the meaning of the contract, which it is not necessary to repeat; and the court concludes as follows:

"And so the question always comes back to the services which he rendered and to the judgment of the directors, honestly exercised upon it, with reference to their satisfaction or dissatisfaction."

Then the court expresses the views we have already referred to with regard to four of the six directors, "whose honesty of purpose is not really attacked." Then follows a discussion by the court of the question of good faith on the part of the two directors, Ames and Clapp. So far as this discussion was concerned, it was all well enough; it took nothing from the jury which they were entitled to consider. It wound up with what we have already said in part, as follows:

"So that, without attempting to discuss the facts with you, as I have already said to you, the defendants say that Turner and these other younger men did not like Gilman, could not get on with him, and they were the active force in there, and they came to Clapp and suggested to Clapp that they did not like Gilman, and thereupon these proceedings were instituted. Well, now, if, upon the whole, the defendant has satisfied you that the termination of the contract was made honestly and in good faith, then you should return a verdict for the defendant. If, on the whole, the defendant has not satisfied you the termination on this contract was made in good faith, then, as far as that part of it goes, the contract was still subsisting; the attempted termination, if made in bad faith, was nugatory; it left the Lamson Company bound to the plaintiff just the same as before."

It is of the sentences commencing, "Well, now, if, upon the whole," that the Lamson Company now complains. As we understand it, this amounts, not merely to an omission to give the instruction requested, but to a denial of it and giving the reverse of it. These sentences put the burden of proof plainly on the Lamson Company, when, under the circumstances, it belonged, on that issue, plainly to Gilman; and the error is an essential one which affects the whole case by expressions as clear as the English language can make them. For the reasons we have stated the error is a fatal one, although there are some expressions which indicate to us, when reading in cold type everything said to the jury, that the views of the court on this topic were not absolutely such as explained by us. Of course, the word "defendant" in these extracts means the Lamson Company, as the defendant in the trial court.

[4] We now come to questions relating to the admission of evidence. As many of these questions relate to the application to this case of Barnett v. Beggs, 208 Fed. 255, 125 C. C. A. 455, and Crawford v. Publishing Company, 163 N. Y. 404, 57 N. E. 616, and as we have shown that the field for investigation in this case is for this purpose broader than that to which either of those decisions relates, it is very probable that some of the questions thus raised by the Lamson Company will drop out on any further investigation; and therefore we will refer to them only so far as we deem it necessary with regard to the lines of investigation which the case, as we understand it, seems to have opened.

These questions of evidence are opened up under that portion of the brief of the Lamson Company marked "IV." Some of them make no distinction as to the period before the extended contract was signed, and the later period. The court ruled that the contract in suit was a renewal of the prior contract, and therefore it ruled that it understood that Gilman was setting up a certain standard of performance of legal work during the existence of the prior contract, to be followed up by showing that the same standard was maintained under the renewed contract, as bearing on the question of good faith; and the court concluded that it would let in this evidence on that question. We are not prepared to say that, on the whole, evidence of this character was not admissible. Perhaps we might find some portions that should have been excluded. The issue was a broad one, and its result was to be determined largely by circumstances, which, like all questions of fraud, might well involve circumstances, some of which would ordinarily be regarded as remote.

We do not mean by our ruling on this point, or on any point of the case, to hold that all positions taken by the court on the effect of bad faith or good faith, as proved or offered to be proved, were correct or complete. This has not been brought to us specifically; and we leave it for consideration when it has been so brought to us, if ever. We will repeat that we are seeking here to correct only what would probably arise on further proceedings in the case; and we leave for future determination the details of everything which, on a new trial, would probably be set right in view of what we are required to dispose of in the present stage of the litigation. We do not, however, intend to determine that this class of evidence is admissible only because it may have gone so far as to fix a certain standard of performance by Mr. Gilman; but we regard it as admissible to a certain extent from a general point of view, easily understood. This we do, although we comprehend that this particular class of evidence may, in any event, be ineffectual unless analyzed and illustrated by the court, or, indeed, may be misleading without such analysis or illustration.

[5, 6] The force of the objection marked "5," on page 33 of the brief of the Lamson Company, is not made clear to us, and we do not understand it without more examination of the record than we are required to give. The same observation applies to point 6 on the same page. The rule of the federal courts applies to both of these objections, that ordinarily it is not sufficient for the federal courts to state that objection is made, without also at the same time stating specifical-

ly the ground of the objection. The reference to Barnett v. Beggs, 208 Fed. 255, 125 C. C. A. 455, at this point, leads to the additional suggestion that this is one of the difficulties possible with reference to a new trial which will disappear after understanding the grounds on which some portions of this opinion rest, as already stated.

On pages 35, and sequence, of the brief for the Lamson Company, we find a number of alleged errors indicated by the letter "b." These seem to refer to a string of objections scattered along from pages 35 to 39. It is very difficult to make sure that we understand them correctly. We find many points of evidence brought to our attention by the briefs, and apparently other considerations as to which our decision is asked. Some of them are merely conversational, or conjectural, and others are lacking in the specific statements which we have said are necessary in order to lay the proper basis for an exception. We are of the opinion that many of them will drop out on further consideration of the case in the light of this opinion, as we have already said; and that may be the fact with reference to all those we have not discussed, except the following remaining one, which, quite likely, is the most important one of all those submitted to us. That was intended to be covered by the proposition of the Lamson Company numbered V, as follows:

"The plaintiff is not entitled to recover in his suit for moneys becoming due under the terms of the contract after the date of his writ."

The jury awarded what, for convenience, we call the substantial present value of the entire $7,000 per annum, covered by the whole period of the contracted term of five years from July 1, 1913, although, by the action of the Lamson Company, the contract was terminated in August, 1914.

Gilman had continued to serve under the extended contract from July, 1913, until on or about the alleged termination in August, 1914; and an amended verdict was awarded for $21,790.24, with interest from the date of the verdict, this interest amounting to $493.91. This verdict and judgment was in accordance with the rule of the Supreme Court of the United States, which, it was said by the Lamson Company, had never been adopted in the state of Massachusetts. It is sufficient for us to say that the rule on which the verdict and judgment were entered appears well illustrated in Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953.

We start with the proposition that, if the law as applied in Massachusetts had been settled as now claimed by the Lamson Company at the date of the renewal contract in litigation, and certainly at the date of the original contract in 1908, it would have affected the question of right, and not of mere practice or procedure; and, therefore, in this case, which arose in Massachusetts, and was between citizens and residents of that state, it would have controlled the District Court of the United States, and would have prevailed over the rule of Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, already cited, which was applied by the trial court. We need not load up the opinion with authorities on this point. But it was not so settled; and, as the rule of

the federal courts is an exceedingly practical one, and not unjust, the District Court was justified in following it.

[7] Roehm v. Horst, at its outset, makes a distinction, which has always been made by the Supreme Judicial Court of Massachusetts, and which leaves this case outside the rule as determined by that court. In Roehm v. Horst, execution of the contract at the time it was repudiated had been commenced, because while in fact there were in form several concurring and analogous contracts, the delivery of the goods stipulated for by the contracts had been commenced, the contracts were partly performed, as the various contracts, though in form independent of each other, were treated for the questions involved as but one contract. The court (page 7 of 178 U. S., page 783 of 20 Sup. Ct. [44 L. Ed. 953]) observed that:

"While as to the first of the four contracts, the time to commence performance had arrived, and the October shipment had been tendered and refused, the breach as to the other three contracts was the refusal to perform before the time for performance had arrived."

Then the opinion proceeds:

"The first contract falls within the rule that a contract may be broken by the renunciation of liability under it in the course of performance, and suit may be immediately instituted. But the other three contracts involve the question whether, where the contract is renounced before performance is due, and the renunciation goes to the whole contract and is absolute and unequivocal, the injured party may treat the breach as complete and bring his action at once."

The opinion then proceeds:

"Defendant repudiated all liability for hops of the crop of 1896 and of the crop of 1897, and notified plaintiffs that he should make (according to a letter of his attorney in the record that he had made) arrangements to purchase his stock of other parties, whereupon plaintiffs brought suit. The question is therefore presented, in respect of the three contracts, whether plaintiffs were entitled to sue at once or were obliged to wait until the time came for the first month's delivery under each of them."

The court then continued:

"It is not disputed that if one party to a contract has destroyed the subject-matter, or disabled himself so as to make performance impossible, his conduct is equivalent to a breach of the contract, although the time for performance has not arrived; and also that if a contract provides for a series of acts, and actual default is made in the performance of one of them, accompanied by a refusal to perform the rest, the other party need not perform, but may treat the refusal as a breach of the entire contract, and recover accordingly."

That disposed of one branch of the case. Then the court took up a mere question of anticipatory breach of an executory contract, which is not the case at bar, because here there was only one contract, and it had been partly performed before the attempt was made to terminate it. On the question of mere anticipatory breach, the court adopted what it regarded as the settled law of England. On this point we find that the Supreme Judicial Court of Massachusetts has departed from the line adopted by the Supreme Court of the United States; but, so far as the case at bar is concerned, the Supreme Judicial Court of Massachusetts has not adopted a different rule by any settled line of

decisions, but has apparently proceeded on the ancient theory that there can be only one breach for one promise, or one contract, a rule which may be of great importance, not only here, but with reference to the statute of limitations, and with reference to other questions which can be suggested. At any rate, the distinction between the two different classes of cases so clearly made in Roehm v. Horst, has never been disavowed, notwithstanding the practical result in each of these two different classes of cases has been the same, so far as the Supreme Court of the United States is concerned, as is shown by a line of decisions which we need not refer to further.

There is no doubt that in Massachusetts, the settled rule with reference to a merely executory contract is as stated by the Supreme Court of the United States independently of the English practice; but we find no settled rule there with reference to cases of the class at bar. On the other hand, we find that the courts of Massachusetts have recognized, always, the distinction to which we have referred, and never have applied the rule of the Supreme Court of the United States to a case where there has been only one contract, with one actual breach, as to which it may ordinarily be said that there is only one remedy, which must cover all damages which have exhibited themselves, or which may afterwards exhibit themselves. This affords a common illustration in the practice of the courts where there has been only one promise, independently of the question whether or not there may be later remedies by scire facias or otherwise, as is customary with reference to a bond for a penal amount intended to protect various breaches at various dates.

What seems to be referred to as a leading case in Massachusetts is Daniels v. Newton, 114 Mass. 530, 19 Am. Rep. 384, decided in 1874. The opinion contains a long discussion, with the result that the suit could not be maintained, and therefore is far from settling any practice in the state of Massachusetts as claimed now by the Lamson Company. This was a suit of a purely executory contract on an agreement to purchase land, brought before the expiration of the time given for the purchase. It is not necessary to say anything further about it at length. It cites Hochster v. De la Tour, 2 E. & B. 678 (1853), which case is understood to have settled the English practice. The opinion delivered by Mr. Justice Wells for the court was a long and thorough discussion; but it finally said on page 541 of 114 Mass. (19 Am. Rep. 384):

"We have no occasion now to determine what may be the rule, where the contract may fairly be interpreted as establishing between the parties a present relation of mutual obligations, because we are of opinion that no such implied obligations can be ingrafted upon the contract in the present case."

All we need say about it is that it does not accept the law as covering a class of cases where there was merely an anticipatory breach, as described in Roehm v. Horst as within the decisions of the English courts. The views on this point of the Lamson Company are apparently based on certain expressions found in Daniels v. Newton, which have never been adopted as establishing what could be held to be a rule of law in Massachusetts. We believe we have examined every case referred to on this topic.

We think the next case was Parker v. Russell, 133 Mass. 74, decided in June, 1882. The opinion, delivered by Mr. Justice Field, afterwards Chief Justice, contained a review of the Massachusetts decisions to the date of its announcement. Suit was brought on a contract for support for life. In that case the consideration for the contract had been fully paid by the conveyance of land, and there was an ordinary agreement of that kind, it appearing that the defendant had accepted the conveyance and occupied and used the land, the sustenance having been afforded until the house involved was destroyed by fire, so that the contract was in full performance on both sides. In accordance with the usual rule, damages were assessed for the full value of the contract, as though there could be only one breach, which was regarded as a total breach of the entire contract. In this case, at page 76, of 133 Mass., Daniels v. Newton was reviewed, and the court said that it did decide that an absolute refusal to perform a contract before the performance was due is not a present breach; but it does not say that it ever did decide that any refusal to perform a contract at the time and under the conditions like those in which Gilman was entitled to require performance might not be a continuous breach. It also declared that the Massachusetts cases then cited were not inconsistent with those views. That must be regarded as establishing the law in Massachusetts at that time in the way in which we understand it, leaving it in the form which it was said in Roehm v. Horst was not disputed. Only two Massachusetts cases were cited, namely, Amos v. Oakley, 131 Mass. 413, and Mullaly v. Austin, 97 Mass. 30. The former case was merely a contract for support, with full consideration paid, as in Parker v. Russell, and the other was for the employment of a minor son, who had been in fact employed in labor a part of the time covered by the contract.

Tufts v. Atlantic Telegraph Company, 151 Mass. 269, 23 N. E. 844, decided in February, 1890, was only the usual case of a discharge, contrary to the contract of the parties after the duties of the position in which the plaintiff was employed had been commenced, and largely prosecuted.

In Paige v. Barrett, 151 Mass. 67, 23 N. E. 725, decided in February, 1890, there was a contract for employment for a brief time which had been entered on, with a wrongful discharge after the services were commenced. Some questions of pleading were involved. The court held that the plaintiff was entitled to only one action, and only one cause of action, and damages must be assessed once for all. There was nothing in either of these cases in 151 Mass. which throws any light on the case at bar. They were both only ordinary cases of employment, in fact commenced, with a wrongful discharge during the terms of the employment.

Cutter v. Gillette, 163 Mass. 95, 39 N. E. 1010, decided February 27, 1895, was only an ordinary case of the same class as those reported in 151 Mass. 67, 23 N. E. 725. Cases of this class are so common that it is difficult to understand why they are enlarged on at all in the Reports. In this last case, the court again restates that the plaintiff's cause of action accrued, and he was wrongfully discharged, and it was

for damages for breach of his contract by the defendant, and that "for this breach he can have but one action."

In Speirs v. Forge Company, 174 Mass. 175, 54 N. E. 497, the right of action was sustained, and we find nothing in it affecting any question we have before us. The same case was before the court in 180 Mass. 87, 61 N. E. 825, but it contains nothing which helps or hurts anything we are considering in this suit, unless it was the suggestion of Mr. Justice Knowlton that everything involved was covered by "a single, entire contract, for the breach of which entire damages are to be assessed once for all." It is difficult to understand how, applying this common and trite rule, it could be otherwise than an award covering the entire agreed period, provided the contract was anything more than a merely executory contract, and was ripe for litigation.

Edwards v. Slate, 184 Mass. 317, 68 N. E. 342, decided in October, 1903, is the ordinary case of a wrongful discharge, as to which the court merely said that it was a simple case of a breach of contract, where the general rule applies that the action may be brought as soon as the breach occurs. The last case cited to us on this topic is Tebbets v. Rollins, 192 Mass. 169, 78 N. E. 299, which throws no light on it which we can discover.

We fail to find that there has been established in Massachusetts a rule or practice relative to the assessment of damages different from that applied by the District Court in this case.

[8] The result is that, for the erroneous ruling on the question of the burden of proof, which we have so fully discussed, we are compelled to order a new trial.

In view of the result reached on the writ of error brought by the Lamson Company, the writ of error by Gilman becomes unimportant, and needs no notice.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; and the Lamson Company recovers its costs of appeal.